## George F. Bradford

*vs.*

## William M. Clark and Austin S. Thompson.

### Lincoln. Opinion May 29, 1897.

*Slander. Privileged Communications. Pleading.*

No action for slander will lie when the words alleged to be defamatory are privileged communications.

The plaintiff, a supervisor of schools, was present at the annual town meeting when a proposition was pending for an appropriation of money for the purchase of more school books and the defendants, who were voters and taxpayers, declared that "the school books had been burned" by him— one of them adding: "I can prove it," and the other, addressing the plaintiff stated: "You, the superintendent of schools, have thrown the text books into the stove in presence of children."

It appearing that in making the imputed statements, the defendants had reasonable grounds for believing they were true; that they made them in good faith in an honest belief that they were true; that they desired definite information in regard to the charges against the plaintiff, when an explanation from him might have been entirely satisfactory; and that they were speaking to the fellow citizens who had a corresponding interest with themselves:

*Held;* That the occasion was privileged.

Whether a joint action will lie in this case, quere.

ON MOTION AND EXCEPTIONS BY DEFENDANTS.

· This was an action for slander in which the jury returned a verdict for the plaintiff, and the defendants filed a general motion for a new trial, and took exceptions to the charge of the presiding justice. The view taken by the court of the motion renders a report of the exceptions unnecessary.

*T. P. Pierce and J. W. Brackett*, for plaintiff.

*W. H. Hilton*, for defendants.

SITTING: PETERS, C. J., WALTON, EMERY, HASKELL, WHITE-HOUSE, STROUT, JJ.

WHITEHOUSE, J. In an action for slander brought against the two defendants jointly, the plaintiff recovered a verdict for $31.47. The case comes to the law court on exceptions and motion for a new trial.

It is alleged in the declaration that the plaintiff was supervisor of schools in the town of Bristol in March 1896, and in that capacity had the care and custody of the school books belonging to the town; that in pursuance of a conspiracy between the defendants to "defame and injure the plaintiff and especially to deprive him of service in his said office," they declared: "That the school books had been burned" (by said Clark spoken of and concerning said complainant) . . . . adding "I can prove it;" thereupon the said Austin S. Thompson replied, personally addressing complainant: "You the superintendent of schools have thrown the text books into the stove in presence of children."

In the brief statement of defense it is claimed that the slanderous words imputed to the defendants respectively "were privileged and uttered without malice and in good faith in the exercise of their respective rights as citizens of the town of Bristol, at the annual meeting of said town held on the second day of March, 1896, while article 7 of the warrant for said meeting, to wit: 'To see what sum of money the town would vote to raise for the purchase of school text books' was being considered in said meeting."

It appears from the plaintiff's testimony and other evidence,

which is substantially uncontroverted, that when in the course of the deliberations at this meeting, article 7 in the warrant was reached, the defendant Clark said: "Mr. Moderator, I move that the article be dismissed; the town cannot afford to raise money to buy books to be used for kindling wood. The town books have been burned during the last year, and I can prove it."

Thereupon the plaintiff who was sitting on the platform touched the moderator, and said: "Mr. Moderator, I understand the gentleman to say the books had been burned in town." The moderator replied: "Yes, that is his statement." The plaintiff then said: "I demand proof of the statement that the guilty party may be brought to justice, as I am the supervisor and custodian of the books.". After a short speech by Mr. Brackett in favor of an appropriation under the article in question, the moderator stated in substance that if there was any person in the hall who knew anything in regard to the destruction of school books, he wished he would make it known. In response to this request the defendant Thompson came forward and said: "Mr. Moderator, I suppose I am the man. During the year in district No. 5, where my children have attended school, the supervisor, Mr. Bradford, threw school books into the stove, and I can prove it by them." In his testimony Mr. Thompson says: "I had three children that was attending that school and they said there had been books put into that stove; I was a taxpayer of the town of Bristol, and, if I was paying taxes to buy books to be used as kindling, I wanted an explanation then and there." Mr. Clark testifies that he had been informed by his son a "reputable citizen," thirty years of age, that school books had been put into the stove. It also appears in evidence that missing books had been advertised in a newspaper, and that the "air was full of rumors" in regard to the loss and destruction of the school books of the town.

The plaintiff himself admits in his testimony that in clearing out the closets in the school house on some occasions he had found school books that were torn and soiled and worn and had thrown such "remnants" into the stove.

These are the principal facts and circumstances upon which the plaintiff's action is founded.

In defense the counsel first sets up the legal objection that a joint action cannot be maintained against two persons for oral defamation or slander. Such was formerly the law in England. 1 Chitty on Plead. (16 Ed.) 97; Gould on Plead. 195, and cases cited. But under the rules of practice now established in England a joint action can be maintained against two or more persons for slander. Odgers on Libel and Slander 371. The old English rule, that a joint action could not be maintained, has generally been assumed to be the law in this country. In Cooley on Torts. (2nd Ed.) 142, speaking of wrongs which are in their nature necessarily individual, the author says: "The case of the oral utterance of defamatory words is an instance. This is an individual act because there can be no joint utterance. He alone can be liable who spoke the words; and if two or more utter the same slander at the same time, still the utterance of each is individual, and must be the subject of a separate proceeding for redress."

But whether under conceivable circumstances there might be such a conspiracy between two or more to defame another, or such a union of thought and purpose and concert of action between them, in the utterance of the same slander, as to render a joint action against them maintainable, it is unnecessary to determine in this case, for it is entirely clear from the evidence that the defamatory words alleged to have been uttered by the defendants on the occasion in question were privileged communications.

It was a New England town meeting, held for the annual election of officers, for the necessary appropriation of money, and to consult upon the common good. The plaintiff was a public officer. His fidelity or efficiency in the discharge of his trust had been brought in question with reference to the preservation of school books. A proposition was pending for the appropriation of money for the purchase of more books. The defendants were voters and taxpayers in the town, having an interest in the subject matter. They had a right to know how the money raised by taxation was being expended. In making the statements imputed to them, they were speaking to their fellow citizens who had a

corresponding interest with themselves. It was a privileged occasion. They had reasonable grounds to believe their statements to be true. They made them in good faith, in the honest belief that they were true. They had no actual malice against the plaintiff. They desired definite information in regard to the charges against him. An explanation from the plaintiff himself might have been entirely satisfactory. He seems to have preferred a law suit to an explanation, and he must abide the result. The statements made by the defendants were privileged.

*Smith* v. *Higgins*, 16 Gray, 251; *Gott* v. *Pulsifer*, 122 Mass. 235; *Bearce* v. *Bass*, 88 Maine, 521; Odgers on Libel and Slander, 234.

*Motion sustained.*