LILLIAN BURCH v. J. I. BERNARD.[1]

February 26, 1909.

Nos. 15,951—(200).

**Slander—Directed Verdict.**

In an action for damages for slander, it is *held* that under the evidence the court was justified in instructing the jury in substance that, if the words as alleged were spoken by the defendant, the plaintiff was entitled to a verdict for some amount.

**Evidence.**

There was no evidence that the words were true, or that they were privileged, or that there was any justification for their use.

**Privileged Communication.**

To give words a privileged character, it must appear that they were spoken in the discharge of some public or private duty, legal or moral, and with that end or purpose in view, or in the conduct of some matter involving his own interests, and for the protection of such interests, that they were relevant and proper in that connection, and that they were uttered in good faith and in the honest belief that they were true.

**Privilege of Public Officer.**

A member of a city council is protected from responsibility for words used on a proper occasion which are pertinent to any proper inquiry or investigation pending before the council, but he has no privilege to wander from the subject and wantonly assail the character of an individual.

**Damages.**

In an action for damages for slander, the financial standing of the defendant may be shown for the purpose of affecting compensatory damages.

Action in the district court for Pipestone county to recover $5,000 for slander. The case was tried before P. E. Brown, J., and a jury

[1] Reported in 120 N. W. 33.

which returned a verdict in favor of plaintiff for $1,875. From an order denying defendant's motion for judgment notwithstanding the verdict or for a new trial, he appealed.. Affirmed.

*Morgan & Meighen,* for appellant.

*P. P. Cady,* for respondent.

ELLIOTT, J.

The respondent, Lillian Burch, an unmarried woman nineteen years of age, who resided with her parents at Pipestone, Minnesota, was during the month of December, 1907, employed by the city authorities to nurse a young woman who was afflicted with the smallpox and quarantined in a building provided for that purpose. On January 13, 1908, Miss Burch presented a bill for her services to the city council, and while the question of the payment of the bill was under consideration by the council the appellant, J. I. Bernard, who was a member of the council, made the statement, in rough and offensive language, that "there was no smallpox there and that they were running nothing but a damn whorehouse." He had made the same statement on the public street before the meeting of the council, and had been warned by a bystander that he had no right to talk that way about Miss Burch, but kept on talking about the place and insisting that it was not run right—"that there was fellows there visiting them." Miss Burch brought this action against Bernard to recover damages for slander, and recovered a verdict of $1,875. The appeal is from an order denying the defendant's motion for a new trial. It is contended that the verdict is excessive, and that the court erred in receiving testimony over the objection of the defendant, and in instructing the jury.

1. The language alleged and found by the jury to have been used was actionable per se, and malice was therefore presumed. There was also evidence from which actual malice might be found, and the jury was justified in awarding punitive damages. Sneve v. Lunder, 100 Minn. 5, 110 N. W. 99; Hewett v. Pioneer-Press Co., 23 Minn. 178, 180, 23 Am. 680.

It is conceded that the language was not absolutely privileged, and the court charged the jury that there was no evidence that the words were true, or that they were privileged, or that the defendant had probable cause to believe they were true. We think that, as the evidence

stood, the instruction was correct. The defendant was a member of the city council, and protected from responsibility for statements made on a proper occasion which were pertinent to any inquiry or investigation pending before the council; but he had no privilege to wander from the subject and wantonly assail the respondent. As said by the court in Quinn v. Scott, 22 Minn. 456, to give words this privileged character, "it must appear that they were spoken by defendant in the discharge of some public or private duty, legal or moral, and with that end and purpose in view, * * * and that they were spoken for the protection of such interests, and were relevant and proper in that connection. It must also appear that they were uttered in good faith and in the honest belief that they were true." Lowry v. Vedder, 40 Minn. 475, 42 N. W. 542; Landon v. Watkins, 61 Minn. 137, 63 N. W. 615; Traynor v. Sielaff, 62 Minn. 420, 64 N. W. 915; Trebby v. Transcript Pub. Co., 74 Minn. 84, 76 N. W. 961, 73 Am. St. 330; Nord v. Grey, 80 Minn. 143, 82 N. W. 1082; Callahan v. Ingram, 122 Mo. 355, 26 S. W. 1020, 43 Am. St. 583; Sullivan v. Strathan, 152 Mo. 268, 53 S. W. 912, 47 L. R. A. 859.

The evidence wholly failed to show that Bernard spoke the words in the honest belief that they were true. It appeared very clearly that he acted in reckless disregard of the consequences to the young woman. The defendant's denial of having used the words charged was not very specific; but he was very certain that, even if he did use them he did not believe that they were true. On cross-examination he testified as follows:

"Q. Now, you believed that there was no smallpox there? A. Well, I did believe it at the time. Q. You believed that it was nothing but a damn whorehouse, didn't you? A. No; I didn't say it. I didn't believe it. Q. I say, if you said it, you believed it? A. I said their actions was more like— * * * Q. * * * Now, I say, if you stated to the council then it was nothing but a damn whorehouse, you believed it, didn't you? A. No; I didn't believe it. Q. Then, if you said it, you didn't believe it anyway? A. I didn't know it was a whorehouse. Q. Then, if you did say it, you didn't believe it that it was a whorehouse? A. I said their actions was acting more like it. Q. Answer my question, please. A. I said, 'No.' Q. (question read). What is your answer to that? A. I said, 'No; that I didn't know it.' * * * Q.

Where you used a vulgar expression following it by saying that it was nothing but a whorehouse? A. I don't think I did it. Q. You didn't make such a remark? A. I don't think I did. Q. Now, if you made that remark, as testified to by Mr. Redmond, did you believe it? A. No; I didn't believe it. Q. No; you didn't believe there was any whorehouse there, did you? A. No, sir. Q. You didn't believe that this plaintiff and that other girl was conducting one there did you? A. I didn't know who was in there. Q. You didn't believe it, then, that they were running one, did you? A. No, sir."

See Quinn v. Scott, supra. The witness Brown testified that on the day of the council meeting he met Bernard on the street, and that Bernard then stated that the pesthouse out there was just a public whorehouse; that he told Bernard that he had no right to talk that way about Miss Burch, but that he went on talking about the place and the way it was conducted. Bernard testified that Brown might have made the statement to him, but that he did not hear the name of Miss Burch used. This occurred before the council meeting, and the evidence was properly received on the issue of the defendant's good faith. Miller v. Cook, 124 Ind. 101, 24 N. E. 577. With the evidence in this condition, the trial court properly instructed the jury that, if they found that the defendant used the words as charged, they had nothing to do but assess the damages.

2. Certain incompetent evidence was received, and subsequently stricken out. In view of the nature of the testimony, the error in receiving it was cured, and was therefore without prejudice to the defendant. State v. Towers, 106 Minn. 105, 118 N. W. 361; Juergens v. Thom, 39 Minn. 458, 40 N. W. 559.

3. A more serious question is raised by the ruling which permitted the defendant to be cross-examined as to the transfer of certain real estate, for the purpose, evidently, of showing that he was conscious of having done something which might bring trouble upon him. But no such purpose was stated, and, if the evidence was admissible for any purpose, it was properly received. The question is not free from doubt; but in view of the rule which permits the financial condition of the defendant to be shown, in an action of this character, on the issue of compensatory damages, we think that no prejudicial error was committed. Miller v. Cook, supra; Carpenter v. Hamilton, 185 Mo. 603,

84 S. W. 863; Kidder v. Bacon, 74 Vt. 263, 52 Atl. 322; 18 Am. & Eng. Enc. (2d Ed.) 1096; Jones, Ev. (2d Ed.) § 160.

4. We cannot say that the damages were so excessive as to show passion and prejudice.

Order affirmed.