JAMES HARRISON WHITE, Respondent, v. UNITED MILLS, INC., Appellant. —208 S. W. 2d 803.

Kansas City Court of Appeals. Opinion delivered January 12, 1948.

*James D. Howell,* of counsel, and *Walter A. Raymond* for appellant.

444

*Cowgill & Popham, Arthur C. Popham* and *Sam Mandell* for respondent.

446

BLAND, J.—This is an action for libel. There was a verdict for plaintiff in the sum of $1000 actual and $1000 punitive damages. Defendant has appealed.

Plaintiff alleges in his petition that defendant operated a large flour mill in Kansas City, Kansas; that on or about October 18, 1943, plaintiff was employed by the defendant as a watchman at its mill and plant for the protection of defendant's property; that plaintiff's superiors "formed a violent, critical denunciatory attitude toward him and contrived and threatened to grievously injure him in his reputation and calling and ability to obtain similar work"; that to accomplish such purpose they "high-handedly, arbitrarily, maliciously, wilfully and intentionally on or about October 18, 1943, executed and wrote out a Notice of Separation on forms used by the Labor Department of the State of Kansas purporting to state the cause of" plaintiff's discharge to be "inefficiency, and willful disobedience in complying with the Company regulations"; that defendant well knew that said "statements were libelous, scandalous utterly and wholly false"; that the statements were made for the purpose of destroying the plaintiff; that he was injured in his calling and was rendered unable to obtain other employment, and was defamed and humiliated.

In its amended answer, upon which the case was tried, defendant admits that it operated a flour mill in Kansas City, Kansas, admits that plaintiff was employed by defendant as a watchman and that such relationship had been terminated. It admits that it prepared and filed the notice of separation set out in plaintiff's petition with the unemployment compensation division of the State of Kansas, and mailed a copy to plaintiff. Such admissions are followed by a general denial. Defendant then pleads the Federal Social Security Act (42 U. S. C. A. 301, *et seq.*), and the unemployment compensation law of Kansas sections 44-701 to 726 (Kansas General Statutes, 1943, Supplement.) These sections of the Kansas Statutes provide that the term "commissioner" or "commissioners" means the State Labor Commissioner; that an individual shall be disqualified for benefits for the week of his discharge and for not to exceed the next nine succeeding weeks when discharged "for misconduct connected with his work"; that it is the duty of the Labor Commissioner to administer the Act, to make rules and regulations, to require such reports, make such investigations, and to take such other action as he deems necessary or suitable to that end; that an employing unit shall keep records containing such information as the Labor Commissioner may require; that such information obtained in administering the act shall not be

published or be open to public inspection, other than to public employees in the performance of their public duties, and so far as necessary for use in any hearing before an appeal tribunal or the Labor Commissioner.

The answer further alleges that pursuant to such statutory authority the Labor Commissioner promulgated a rule therein described which provides that whenever a worker is separated from his employment, under circumstances which may disqualify such worker from benefits under the Unemployment Compensation Act, the employer shall immediately mail to the Labor Commissioner a Notice of Separation on a form supplied by the Commissioner setting forth the information required thereby; that a copy of such notice must be delivered or mailed to the worker.

The amended answer further alleges that plaintiff refused to obey instructions that he must at all times be where he could see and view defendant's premises and persisted in spending part of his time where he could not effectively watch and guard the premises; that plaintiff missed making rounds of defendant's premises and pulling certain clocks at stated times as he was directed; that plaintiff would not obey directions but conducted his work in accordance with his own wishes and ideas; that defendant discharged plaintiff because of his said misconduct and filed such Notice of Separation stating truly such reason under compulsion of law; that under the decisions of the State of Kansas, which were pleaded, said action of defendant was absolutely privileged and that said facts were true which was likewise a defense under the decisions pleaded.

The facts show that defendant owns a large six story flour mill and some distance away from the mill on the same premises is a small office building; that plaintiff, on or about July 20, 1943, was employed as a watchman by defendant to watch both the inside and the outside of its premises; that it was engaged in war work and it was necessary that the property, at all times, be properly protected; that part of plaintiff's duties were once each hour to start on the hour or within twenty minutes after the hour and make the rounds of eleven clocks, punching them (seven of the clocks were inside and four outside the mill); that at five minutes before the hour and five minutes before the half hour he was to be within hearing distance of the telephone to receive emergency calls; that at all other times he was to keep himself located where he had a view of the plant so that he could watch the premises effectively; that plaintiff was under the supervision of defendant's coordinating foreman, one McDonald; that in one of the rooms in the office building where there was a telephone a good view of the premises and the mill could be had, but in another room where a radio was located a limited view only could be had; that there was another radio on the far side of the mill located in a room from which the premises could not be viewed.

Defendant's main complaint, as shown by the testimony, was that plaintiff devoted too much of his time listening to the radio to properly discharge his duties and, on one occasion, he missed one of his rounds, failing to punch the clocks.

Plaintiff denied defendant's contentions. He admitted that he listened to the radios at times but stated that he listened to the radio in the office building with the consent of Mr. Ackers, defendant's executive secretary, who warmed up the radio so that it would be ready for him to use so that he could get the news. He stated that he never listened to the radio located in the mill building while on duty, except one time; that he always obeyed the directions of Mr. McDonald about listening to the radio. However, he admitted that Mr. McDonald spoke to him twice about listening to the radio in the office building when he was on duty, and that McDonald about two weeks before he was discharged took the plug out so he could not listen to it. He also testified that McDonald never before this complained of his listening to 'the radio. When McDonald told him about plugging the radio he replied "that is all right", and McDonald then said in a loud and angry voice, "I will fix you so that you will never get another job on account of clearance from this job". The witness testified that he did not understand what McDonald meant at the time, and not until he received a copy of the notice of separation; that he was not conscious of anything he had done to cause McDonald to make this statement; that he never refused to do anything that he was directed to do, nor did he disobey instructions; that when McDonald would treat him like that he (the witness) would tell him "I could quit my job if I wasn't doing the right thing" any time McDonald desired.

On the Sunday before he was discharged, and at a time apparently when he and McDonald were talking about the witness using the radio, the latter told McDonald that he was interested in the war news "that was on the radio"; that the witness had two nephews, twelve great-nephews and a grand-son, all in service; that McDonald replied in a loud and angry voice "that don't make a damn bit of difference. You are here to watch"; that McDonald took plaintiff's statement to mean a reflection upon the former's war record. The witness testified that he had no intention of reflecting on McDonald in any way; that after that he noticed a change in McDonald's attitude, "well, he just would pass me sort of like a whirl-wind and hardly would speak to me for several days before I was taken out of the job". Plaintiff denied having missed any of his rounds or punching the clocks. If plaintiff's evidence is to be believed the jury was justified in concluding that he was discharged not because of the reason assigned in the notice of separation but as the result of ill will and malice on the part of McDonald.

McDonald dictated to Ackers who, defendant's evidence shows, was a bookkeeper and stenographer, the language used in the separation

notice which forms the basis of this suit. There is no evidence that anyone saw this instrument, or a copy thereof, except the officers of the defendant, Ackers and plaintiff, unless plaintiff showed his copy.

The evidence tends to show that any prospective employer with knowledge of the contents of the notice of separation would not employ plaintiff.

Plaintiff was making $210 per month at the mill. After his discharge he tried to obtain a job at another plant engaged in war work. He was asked if he had a clearance and he did not obtain the employment because he could not get into war work without a good clearance. He also learned that other war plants would not employ him without a good clearance. He later obtained a job with another concern at a salary of $85 per month. Later he went to work for the McDaniel Title Company where he is still employed at a salary of $85 per month.

The case was tried under the Kansas Law. It is admitted that the common law is in force in Kansas.

Defendant insists that the court erred in refusing to sustain its motion for a directed verdict for the reason that the communication which defendant made to the Labor Commissioner, contained in the Notice of Separation, and which is the basis of this suit, was an absolutely privileged communication and, for that reason, not properly the subject of an action. In this connection defendant insists that the duties of the Labor Commissioner in respect to matters such as related to notices of separation are quasi-judicial in character, and we think there is no question but that they are.

Section 44-709, Gen. Stat. Kansas, 1943 Supplement, provides for the filing of claims for benefits with the Labor Commissioner, and that he may designate an examiner to examine the claim to determine whether or not it is valid, and the amount of benefits, etc., and who may refer the claim to an appeal tribunal. It provides for hearings before the appeal tribunal and for appeals to the commissioner; that the commissioner "may, on his own motion, affirm, modify or set aside any decision of the appeal tribunal on the basis of the evidence previously submitted in such case or direct the taking of additional evidence, or may permit any of the parties to such decision to initiate further appeal before it". This section also provides for the subpoenaing and payment of witnesses and for a judicial review of the decision of the commissioner. That the commissioner in the discharge of his duties is acting in a quasi-judicial capacity, we think there is no question, (Kirby v. Nolte, 164 S. W. (2nd) 1; Mangieracina v. Haney, 141 S. W. (2nd) 89, 91; Ark. Corp. Comm. v. Thompson, 61 Sup. Ct. Rep. 888; State v. Board of County Comm. etc., 107 Pac. (2nd) (Okla.) 542; Nash v. Brooks, 11 N. E. (2nd) (N. Y.) 545), and that, likewise, communications made in such proceedings, which are pertinent to the issue, are absolutely privileged. (Reagan v. Guardian

Life Ins. Co., 166 S. W. (2nd) (Tex.) 909; Ind. Life Ins. Co. v. Rodgers, 55 S. W. (2nd) (Tenn.) 767; Parker v. Kirkland, 18 N. E. (2nd) (Ill.) 709; Stafney v. Standard Oil Co., 299 N. W. (N. D.) 582; Ark. Harbor Term. Ry. Co. v. Taber, 235 S. W. (2nd) (Tex.) 841; Shummay v. Warrick, 189 N. W. (Nebr.) 301; Higgins v. Coal Co., 138 S. E. (W. Va.) 112.)

Although in this case there is evidence tending to show that the communication was the result of actual malice on the part of the defendant, there is no contention but that communications made, and testimony, in judicial proceedings are absolutely privileged under the laws of Kansas. (See Davis v. Union State Bank, 20 Pac. (2nd) 508), but plaintiff insists that, under the laws of Kansas, the rule of absolute privilege is not recognized as relating to quasi-judicial proceedings. If this be the law of Kansas it is contrary to the general rule. "The rule (concerning the privilege of communications in the courts) is broad and comprehensive, including within its scope all proceedings of a judicial nature, whether pending in some court of justice, or before. a tribunal or officer clothed with judicial or *quasi-judicial powers. ·It applies to communications made before tribunals having attributes similar to those of courts*". (36 C. J. pp. 1250, 1251.) . (Italics ours.) (See, also, 33 Am. Juris. p. 144, and cases last cited.)

In support of his contention plaintiff cites Marney v. Joseph, 145 Pac. 822; Bugg v. Northwestern Nat'l. Life Ins. Co., 220 Pac. 258, and Kirkpatrick v. Eagle Lodge, etc., 26 Kans. 384. In none of these cases is it held that communications made in a quasi-judicial proceeding are not absolutely privileged. The case of State v. Wilcox, 90 Kans. 80 is not in point. It merely lays down the rule recognized, generally, that communications to a law enforcement officer for the purpose of helping to bring a criminal to justice are qualifiedly privileged only, not absolutely privileged. (See 22 Am. Juris. p. 136.) There being no Kansas authority cited holding that a matter of this kind is not absolutely privileged we apply the general or common rule as we have stated it. (Hamm v. Rd. 136 Mo. App. 17.)

In support of his contention that there is nothing absolutely privileged in connection with the proceedings before the Labor Commissioner of Kansas plaintiff cites section 44-719 (b), 1943 Supplement, General Statutes of Kansas, which provides as follows: "Any employing unit or any other officer or agent for any employing unit or any other person who makes a false statement or representation knowing it to be false, or who knowingly fails to disclose a material fact, to prevent or reduce the payment of benefits to any individual entitled thereto" shall be guilty of a crime and punished by fine or imprisonment or both. In view of this provision of the statute plaintiff insists: "The rule is that statements to which absolute privilege attaches cannot be made the basis of criminal prosecution, and the very fact that criminal prosecution and penalties are provided in

cases of false statements by any employer necessarily means that the statements to the Labor Commissioner are not to be considered or held to be absolutely privileged''. We think there is no merit in this contention. A witness testifying in court is protected by the rule of absolute privilege no matter how false or malicious his statements may be, yet, he is not immune from prosecution for perjury and false swearing, and we do not think that the Kansas Legislature in providing that the persons named in Section 44-719 (b) shall be guilty of a crime and be prosecuted therefor for a false statement or representation knowing it to be false, in relation to the matters therein mentioned, intended thereby to remove the right of absolute privilege in cases of this kind.

Plaintiff, however, insists that there was no proceeding pending before the Commissioner at the time the communication in question was made to it, for the reason, that plaintiff made no claim for unemployment benefits. The Notice of Separation is required for the purpose of use in view of a possible claim being made for benefits by the discharged employee. It is required to be made for use in the hearing and in the determination of such a claim. The filing of the notice of separation is for the purpose of preserving testimony and we think, under the circumstances, it is so closely related to the prosecution of such a claim as to fall into the same classification with communications made in a quasi-judicial proceeding. Certainly there is nothing in the Kansas Statute to indicate that the employee, may, by an election to or not to file a claim, determine whether or not such a communication is privileged.

The evidence in this case shows without dispute that the Notice of Separation was required by law and was made upon a form provided by the Commissioner of Labor of the State of Kansas, and that it indicates, as required, the reason which the employer had for discharging plaintiff, (whether it truly stated the reason is immaterial) and that it was pertinent to the occasion. We conclude that the communication was absolutely privileged and that the plaintiff has no cause of action for libel based upon it.

The judgment is reversed. All concur.