JAMES M. MILLS, appellee, v. ALLAN W. DENNY, appellant.

No. 48444.

(Reported in 63 N. W. 2d 222)

MARCH 9, 1954.

Robert H. Bush and Dean R. Prichett, both of Des Moines, for appellant.

James M. Mills, of Des Moines, for appellee.

LARSON, J.—Plaintiff, an attorney at law practicing in Des Moines, Iowa, brought suit against the defendant, who was the mayor of said city, alleging: "That on July 27, 1953, the defendant, while seated at the council table in the City Council Room * * * in the presence and hearing of the other members of the council and the representatives of the press and radio, and a number of citizens * * * including * * * plaintiff's client, made a statement which was intended to injure the plaintiff and his business, which statement was wrongfully and maliciously spoken, and which was false and defamatory." It was: "Mills, you know that our hands are tied by the courts. You are guilty of dereliction of duty as an attorney towards your client inasmuch as you seemingly advised her that the City Council could take any action which would or could result in the resumption of bus service on the lines abandoned by the Des Moines Railway Company. You have appeared here only as a publicity stunt." A local newspaper printed the story giving it wide publicity. Plaintiff asked damages of defendant in the sum of $4000.

Defendant's motion to dismiss is urged here solely on the ground that "* * * the alleged slander was made by the defendant as Mayor and member of the City Council of the City of Des Moines, Iowa, * * * and is therefore a privileged communication and not actionable." In this appeal defendant complied with rule 332, R. C. P. Thus the only question before us at this time is whether or not on this occasion the alleged utterances and publication were so privileged as not to be actionable; or in other words, whether or not the occasion and office provided for defendant an absolute privilege.

I. Privileged communications are divided into two main general classes, namely: (1) those that are absolutely privileged, and (2) those that are qualifiedly or conditionally privileged. Robinson v. Home Fire & Marine Ins. Co., 244 Iowa 1084, 1093, 59 N.W.2d 776; Robinson v. Home Fire & Marine Ins. Co., 242 Iowa 1120, at 1125, 49 N.W.2d 521, and authorities therein set out; Newell on Slander and Libel, 4th Ed., section 349; Harper on Torts, 1933 Ed., section 246, page 532; Prosser

on Torts, 1941 Ed., page 826; 33 Am. Jur., Libel and Slander, section 124, page 123; 53 C. J. S., Libel and Slander, section 87, page 141.

II. An absolute privilege affords a complete defense. Robinson v. Home Fire & Marine Ins. Co., supra; 3 Restatement of the Law of Torts, page 219; 33 Am. Jur., Libel and Slander, section 125, page 123; 53 C. J. S., Libel and Slander, section 87, page 142; Nichols v. Eaton, 110 Iowa 509, 511, 81 N.W. 792, 47 L. R. A. 483, 80 Am. St. Rep. 319. Even the existence of actual malice will not destroy an absolute privilege when it is applicable. Ryan v. Wilson, 231 Iowa 33, 52, 300 N.W. 707, 712; Robinson v. Home Fire & Marine Ins. Co., supra.

III. It may be generally stated that the occasion and the office afford the test as to whether an alleged slanderous or libelous statement may be absolutely privileged, conditionally or qualifiedly privileged, or not at all privileged. Ryan v. Wilson, supra; Newell on Slander and Libel, 4th Ed., section 340, page 380; Children v. Shinn, 168 Iowa 531, 150 N.W. 864. For a definition of a privileged communication, see Black's Law Dictionary, 4th Ed., page 349.

The doctrine of privileged communication is based upon the principle of good public policy. This is especially true with the cases of absolute privilege, where the interests and the necessities of society require that on certain occasions, utterances or publications of individuals, even though they are both false and maliciously made, shall protect the defamer from all liability to prosecution. Ryan v. Wilson, supra; Newell on Slander and Libel, supra; Tanner v. Stevenson, 138 Ky. 578, 128 S.W. 878, 30 L. R. A., N.S., 200. It rests upon the same basis of necessity that is found in other tort laws. Instances abound where the individual must surrender his personal rights and suffer loss for the benefit of the common welfare. "The right of free speech is in some cases allowed to prevail over the right to reputation, in apparent derogation of the theoretical competence of the law to afford a remedy for every wrong." 9 Columbia Law Review 463.

We do not consider herein the rules applicable to the qualified or conditional privilege, and do not determine whether, or not

they apply to the case at bar. They will no doubt be considered in the further proceeding below. It is sufficient here that we consider only the absolute privilege. It is generally held that the public welfare alone justifies the privilege on occasions that some persons should be allowed to express their sentiments and speak their minds fully and fearlessly upon all questions and subjects; that all actions for words so spoken are absolutely forbidden, even if it be alleged and proved that the words were spoken falsely, knowingly and with express malice. This rule should be and usually is confined strictly to cases in which the public service or the administration of justice requires complete immunity, to legislatures in debate, judges and attorneys in the preparation and trial of cases, and in executive and military personnel within the duties of their offices. Ryan v. Wilson, supra. These classes must of course be limited, and where this limitation is placed there is some split of authority. But most courts as well as textbook writers agree that this class of privilege is and must be restricted to narrow and well-defined limits. The privilege spoken of is in reality an immunity provided, applicable only to recognized positions and occasions.

Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary. The same is true in federal and state legislatures, and their committees, where the decorum is under the watchful eye of presiding officers, and records may be stricken and the offending member punished. If this is not done, the day may come when the courts will no longer recognize and grant absolute immunity even in this field, for then the evil will overshadow the good and will not aid the public welfare. In the case of executive officers, therefore, much narrower limits are necessary, and so only top officers or executives whose acts are of necessity secret or confidential fall within this immunity. Underlying the doctrine of absolute immunity is the concept of an alternate if not adequate remedy. Extension to fields where

no such safeguards or remedies are found has been uniformly refused by the courts and justly so, for absolute immunity in defamation matters presents a conflict between two American principles equally regarded in the law, i. e., the right of an individual on one hand to enjoy his reputation unimpaired by defamation attacks, and on the other hand the necessity in the public interest of a free and full disclosure of facts in the conduct of the Legislative, Executive and Judicial Departments of Government. 9' Columbia Law Review 463, 471.

██ IV. Nevertheless the rule is quite well settled in all jurisdictions that the question as to whether or not there is a privilege, absolute or qualified, under the circumstances or occasion involved, is for the court. Robinson v. Home Fire & Marine Ins. Co., supra; Children v. Shinn, 168 Iowa 531, 549, 150 N.W. 864; Ryan v. Wilson, supra; 3 Restatement of the Law of Torts, section 619, page 310. If found to exist and the court determines the privilege is absolute, the action must be dismissed, and if found to be qualified or conditional, then the question of fact relating to plaintiff's proof of malice is usually for the jury under the usual rules of evidence. Odgers on Libel and Slander, page 227; Laun v. Union Electric Co., 350 Mo. 572, 579, 166 S.W.2d 1065, 1069, 144 A. L. R. 622, 627; 3 Restatement of the Law of Torts, section 619, page 310; Children v. Shinn, supra; Newell on Slander and Libel, 4th Ed., section 345; 33 Am. Jur., Libel and Slander, sections 124, 125, page 123.

██ Defendant contends that the occasion presented herein was such that he was entitled to absolute immunity. He contends that the council was in session; that the plaintiff had made a plea for council action by requesting a meeting and an arrangement between the council and the receivers of the bus company to raise fares and restore service on abandoned bus routes within the city; that the mayor, as spokesman for the council, answered the plea in his official capacity and in that answer used the words complained of by plaintiff. Defendant further contends he was acting with the council in a legislative, as well as in a quasi-judicial capacity at the time, and that he did not stray or wander from the subject of debate to assail the character of the plaintiff, and should be clothed under these circumstances with absolute immunity from actions on his utterances.

The learned trial court, by overruling the defendant's motion, decided that under the pleadings, at least, the privilege or immunity enjoyed by the defendant, if any, was not an absolute privilege or immunity absolving him of all responsibility for his statements. We must agree, for council action, even under the delegated powers it possesses, does not exercise the legislative or judicial functions intended to merit the privilege of absolute immunity.

In Blakeslee & Sons v. Carroll, 64 Conn. 223, 234, 29 A. 473, 475, 25 L. R. A. 106, the court, in a case involving an investigation by a committee of a board of aldermen, said that the legislative delegated power given it cannot be held to confer judicial or quasi-judicial power upon the presiding officer, and certainly not upon the committee, though it had the power to issue subpoenas and administer oaths. "A judicial proceeding within the meaning of the rule as to absolute privilege must, we think, be one carried on in a court of justice established or recognized by law, wherein the rights of parties which are recognized and protected by law are involved and may be determined." We believe this to be good logic.

Defendant further contends that the city council of a municipality the size of Des Moines has many vexatious problems similar to the state, and that it has been delegated many legislative and judicial functions by the state legislature, and that it should for the public welfare be extended the privileges and immunities in the performance of its official functions of a legislative or judicial nature. It is obvious that such an extension would of necessity include all such subordinate legislative and quasi-judicial bodies, boards and councils, and could not be limited to the size or complexities of a certain few.

It must also be pointed out that the safeguards heretofore mentioned are not to be found in these government functions, to aid in the protection of an individual otherwise disarmed, from unjustified defamation. Most textbook authors and the Restatement are in accord. In 33 Am. Jur., Libel and Slander, section 125, page 123: "The class of absolutely privileged communications is narrow and is practically limited to legislative and judicial proceedings and other acts of state [citing cases]."

In 3 Restatement of the Law of Torts, section 590, page 236, we find the statement that a member of Congress or of the state or territory legislature is absolutely privileged to publish false and defamatory matter of another in, the performance of his legislative function. Under Comment (c) on page 237: "The rule stated in this Section is applicable to members of the Congress of the United States and to members of the highest legislative body of a State or Territory of the United States. It is not applicable to members of subordinate legislative bodies to which the State has delegated legislative power." Under Comment (a), section 599, the conditional privilege which is applicable to such subordinate bodies is also discussed.

In Harper on Torts, 1933 Ed., section 248, page 532: "This protection [absolute privilege] is confined to members of state and the federal legislature, and does not extend to municipal boards or councils or town meetings."

In Prosser on Torts, 1941 Ed., page 828: "It is generally agreed, however, that the proceedings of subordinate bodies performing a legislative function, such as municipal councils or town meetings, are not within the policy underlying such absolute immunity, and that the members of such bodies are sufficiently protected by exemption from liability in the exercise of good faith."

These authorities announce the majority rule, and we believe the sound rule. While we have found no cases in Iowa on the exact occasion involving a city council, in the case of Children v. Shinn, supra, 168 Iowa 531, 549, 150 N.W. 864, 869, we held that the privilege of a member of the board of supervisors, which is also a subordinate legislative body, was a qualified privilege. We said therein: "It was for the court to say whether or not the occasion was privileged, but *as the privilege was a qualified one*, it was for the jury to say under proper instructions whether or not the defendant abused his privilege." (Italics added.)

In State v. Haskins, 109 Iowa 656, 658, 80 N.W. 1063, 47 L. R. A. 223, 77 Am. St. Rep. 560, we said: "An absolute privilege is a complete defense. No legal complaint can be founded upon words spoken or written under its protection. Of this nature are proceedings in legislative assemblies, and generally in judicial tribunals."

The court here clearly had reference to the state legislative assembly. Also see Mayo v. Sample, 18 Iowa 306; Brown v. Cochran, 222 Iowa 34, 268 N.W. 585; Nichols v. Eaton, supra.

It is true, as defendant here maintains, that some states, principally Michigan, have extended the coverage to municipalities and other subordinate bodies. In Bolton v. Walker, 197 Mich. 699, 164 N.W. 420, Ann. Cas. 1918E 1007, the court concluded that a board delegated semilegislative discretion with power and control in tax matters, by the legislature, was exercising a function of great public concern and should be given legislative or judicial immunity. Also see Wachsmuth v. Merchants National Bk., 96 Mich. 426, 56 N.W. 9, 21 L. R. A. 278; Tanner v. Gault, 20 Ohio App. 243, 153 N.E. 124; Trebilcock v. Anderson, 117 Mich. 39, 75 N.W. 129; White v. United Mills, Inc., 240 Mo. App. 443, 208 S.W.2d 803. Also see 33 Am. Jur., Libel and Slander, section 141, page 138. However, most of the courts have rejected such extension of absolute immunity and permitted such bodies only a conditional or qualified privilege. Bradley v. Heath, 12 Pick. (Mass.) 163, 22 Am. Dec. 418; Smith v. Higgins, 16 Gray (Mass.) 251; Bradford v. Clark, 90 Maine 298, 38 A. 229; Henry v. Moberly, 6 Ind. App. 490, 33 N.E. 981; City of Mullens v. Davidson, 133 W. Va. 557, 57 S.E.2d 1, 13 A. L. R.2d 887; Quinn v. Scott, 22 Minn. 456; White v. Nicholls, 3 How. (U. S.) 266, 11 L. Ed. 591; Greenwood v. Cobbey, 26 Neb. 449, 42 N.W. 413; Burch v. Bernard, 107 Minn. 210, 120 N.W. 33; McGaw v. Hamilton, 184 Pa. 108, 39 A. 4, 63 Am. St. Rep. 786.

While it is well settled that the court must determine whether or not the occasion was privileged, the court must also, we think, determine the extent of the privilege or immunity. It is the occasion or circumstance, as well as the office, that calls for the immunity, not the individual as such. Callahan v. Ingram, 122 Mo. 355, 26 S.W. 1020.

In Mauk v. Brundage, 68 Ohio St. 89, 97, 67 N.E. 152, 155, 62 L. R. A. 477, 481, a case in which the facts were conceded, the court said: "Not being essential, or even important, that the board should undertake to fix the blame on any particular person, it follows that the preamble was not a privileged communication,

and that those who passed and published it assumed the responsibility as individuals, and could not shield themselves by merely showing that they acted as members of the board * * *."

It is our feeling that the welfare of society does not require the individual here also to surrender his personal rights absolutely to provide such immunity, though we concede perhaps the cases of abuse would be few. We agree with the majority of the courts in other jurisdictions and textbook writers in holding that the qualified privilege adequately protects such public officials who in good faith make bona fide statements upon any subject matter that are pertinent and relevant to the question on the privileged occasion. Such immunity is sufficient, for of itself it abrogates the rule that every defamatory publication implies malice. There is no necessity, we feel, to go further. Having determined that the utterances or publications of members of a city council are not included in the absolutely privileged communication, we must hold that the action of the trial court in overruling the motion to dismiss was right. Its action must be and is therefore affirmed.—Affirmed.

All JUSTICES concur.