Robert W. JOHNSTON, Appellant,

v.

H. G. CARTWRIGHT, Appellee.

KIOWA CORPORATION, Walter Brown and H. G. Cartwright, Appellants,

v.

Robert W. JOHNSTON, Appellee.

Nos. 17898, 17913.

United States Court of Appeals
Eighth Circuit.

Jan. 25, 1966.

Lex Hawkins, Des Moines, Iowa, for Robert W. Johnston.

Harry Druker, Cartwright, Druker, Ryden & Fagg, Marshalltown, Iowa, for appellants Kiowa Corp. and Walter Brown.

Burns H. Davison, II, John Paul Jones and W. C. Hoffmann, Des Moines, Iowa, for appellant H. G. Cartwright.

Before VOGEL, Chief Judge, and BLACKMUN and GIBSON, Circuit Judges.

BLACKMUN, Circuit Judge.

This diversity action for general and punitive damages for malicious defamation was instituted by Robert W. Johnston against Kiowa Corporation, Walter Brown, and H. G. Cartwright. Kiowa is engaged in the die-casting business in Marshalltown, Iowa. Brown is its executive vice-president. Cartwright is Kiowa's attorney. He also represents the Marshalltown Times-Republican, a newspaper of general circulation. The plaintiff Johnston is regional director of the UAW. His region consists of the state of Iowa and other territory. The al-

legedly defamatory material appeared in the newspaper's issues of June 9 and June 11, 1964.

Kiowa and Brown in due course filed a joint answer to the complaint. Cartwright, however, moved that the action as to him be dismissed. Judge Stephenson granted that motion on September 24, 1964. He did so on the ground of an attorney's absolute privilege. Judgment of dismissal as to Cartwright was entered accordingly.

The plaintiff then moved, evidently pursuant to Rule 41(a) (2), Fed. R. Civ. P., that his complaint against Kiowa and Brown be dismissed without prejudice. This motion was granted at the plaintiff's costs on October 22.

Thereupon, the plaintiff perfected his appeal to this court from the order and judgment of dismissal as to the defendant Cartwright. This is our No. 17,898. Cartwright moved to dismiss that appeal on the ground that, under Rule 54(b), the order and judgment lacked finality. We held otherwise and denied the motion. Johnston v. Cartwright, 344 F.2d 773 (8 Cir. 1965).

Kiowa, Brown and Cartwright, on their part, have appealed from the district court's dismissal of the action as to Kiowa and Brown. This is our No. 17,-913.

Although the two appeals have been separately briefed, we deal with both in this opinion.

### The plaintiff's appeal

The lawsuit emerged from a UAW campaign to replace another union which had represented Kiowa's employees. The UAW prevailed in a labor board election held June 10, 1964. The day before that election Kiowa placed an advertisement in the Times-Republican in the form of a letter to its employees and over the name of Brown, acting for the corporation. That letter contained the following statement:

"The union has told you that if the union wins, they will get you a 'fully funded pension plan' Guaranteed by the UAW. This means that the

UAW will hold the funds and make sure you get it when you retire. In Rockford, Illinois, the regional director of the UAW had a 50¢-a-month special assessment on all UAW members in the area, to be used to build a UAW building. When time came to use the $387,000 to start the building, they found the cupboard empty.

"The U. S. Government in 1962 stepped in and indicted the UAW regional director. In 1963, he was tried, found guilty, and U. S. District Judge Sam Perry put him away for a few years.

"Are these the kind of union officials you can trust to hold money for your retirement in 10, 15, or 20 years?"

The plaintiff Johnston, who was the union's regional director, was not, in fact, the subject of the criminal proceeding before Judge Perry. The defendant there was a different person who, apparently, had been a subregional director of the UAW.

On June 11, the day following the election, an article appeared in the Times-Republican, reading in part as follows:

"Introducing a discordant note, Carl Dahl, subregional director for the UAW, congratulated Kiowa workers on their 'wise decision' and added, 'It was unfortunate that the company had to resort to falsehoods and slanders to keep the workers from voting for a union of their choice.'

" 'Accusing the regional director (of the UAW) of embezzling funds' is 'definitely a false statement,' Dahl said. 'The company may be asked to prove this because it is libelous.'

\*     \*     \*     \*     \*     \*

" 'The story came to us on pretty good authority,' H. G. Cartwright, attorney for Kiowa, said Thursday morning, 'I'm not at liberty to divulge where it came from.' "

In a deposition taken by the plaintiff from Cartwright, the latter testified that

he has practiced labor law for over 20 years; that Kiowa is among his labor clients; that he has not appeared in state or federal courts in Iowa on labor matters for these clients; that his work has been before administrative boards and tribunals; that he has represented the newspaper for 39 years; that he has come in contact with the UAW in his work; that, although he has represented Kiowa since the middle 40's, the first time he represented it in any labor matter regarding the UAW was "before June of 1964"; that he saw the advertisement of June 9 before it was given to the paper and knew it was going to be published; that at that time he represented the newspaper; that the paper, however, "did not contact me personally regarding any legal aspects of this particular ad before it was published, as an attorney client relationship"; that he did not make any investigation regarding the factual material in the ad; that the article in question was composed by a public relations director in Chicago; that "we accepted his versions of these matters as true"; that he had not known this man or anything about his background, other than what was told him by Kiowa officials; that prior to the June 9 publication he did not know who the regional director of the UAW was; that on June 10 or 11 a reporter got in touch with him by telephone; that he was accurately quoted in the article of June 11; that at the time he made the quoted statement he was not under the impression "that there was any litigation pending regarding the statements"; that, in fact there was no such litigation then pending; that he had not then talked with either Brown or Kiowa about representing them in any libel suit; that he was representing the newspaper on July 13 when it received a letter from Johnston requesting a retraction; that he then made an independent investigation; that he was relying entirely on the Chicago public relations man at the time he made the statement; that if he had had information as to the criminal proceedings, his "statement would have been stronger"; that the paper published a retraction on the front page of its editions of July 23; and that this was done against his advice.

■ If the subject matter has not been preempted by the Labor Management Relations Act, 1947, 29 U.S.C. § 141, et seq.,* Iowa law, of course, controls the determination of the merits of this diversity case. The Supreme Court of Iowa, in two opinions, has clearly enunciated the State's general law as to privileged communications and presents factual precedent which is helpful in the disposition of the plaintiff's appeal. Robinson v. Home Fire & Marine Ins. Co., 242 Iowa 1120, 49 N.W.2d 521 (1951); Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 40 A.L.R.2d 933 (1954). These opinions, singly or together, state that the Iowa law of defamation recognizes the existence of privileged communications; that some communications are absolutely privileged; that is, are beyond civil remedy, despite the existence of even actual malice; that others are qualifiedly or conditionally privileged; that "the occasion and the office afford the test"; that "The doctrine of privileged communication is based upon the principle of good public policy"; and that the questions as to whether privilege exists and, if so, as to whether it is absolute or qualified, are for the court. P. 524 of 49 N.W.2d; pp. 224–225 of 63 N.W.2d. There is language which bears upon the question of absolute privilege in judicial proceedings:

> "A matter that is reasonably pertinent to the issues is absolutely

* Compare the results reached in Linn v. United Plant Guard Workers, 337 F. 2d 68 (6 Cir. 1964), cert. granted 381 U.S. 923, 85 S.Ct. 1558, 14 L.Ed.2d 682, and in Sullivan v. Day Publishing Co., 239 F.Supp. 677 (D.Conn.1965), with those in Brantley v. Devereaux, 237 F.Supp. 156 (E.D.S.C.1965), and Meyer v. Joint Council 53 Int'l. Bhd. of Teamsters, 416 Pa. 401, 206 A.2d 382 (1965), petition for cert. dismissed 382 U.S. 897, 86 S.Ct. 193, 15 L.Ed.2d 154.

privileged whether contained in pleadings, affidavits, statements made by witnesses to counsel before a trial, or made in open court.

\* \* \* \* \* \*

"The basis for the rule \* \* \* has equal application to a situation where an attorney is conferring with a prospective witness. To hold an attorney or witness liable for statements made in a preliminary conference would discourage him from conferring about proposed testimony relative to an action then pending or contemplated, and thus tend to defeat the ends of justice." Robinson v. Home Fire & Marine Ins. Co., supra, pp. 525 and 527 of 49 N.W.2d.

"This rule should be and usually is confined strictly to cases in which the public service or the administration of justice require complete immunity, to legislatures in debate, judges and attorneys in the preparation and trial of cases, and in [sic] executive and military personnel within the duties of their offices. \* \* \* [T]his class of privilege is and must be restricted to narrow and well-defined limits. \* \* \*

"Absolute immunity, it seems, should be confined to cases where there is supervision and control by other authorities, such as courts of justice, where proceedings are under the able and controlling influence of a learned judge, who may reprimand, fine and punish as well as expunge from records statements of those who exceed proper bounds, and who may themselves be disciplined when necessary. \* \* \* [A]bsolute immunity in defamation matters presents a conflict between two American principles equally regarded in the law, i. e., the right of an individual on one hand to enjoy his reputation unimpaired by defamation attacks, and on the other hand the necessity in the public interest of a free and full disclosure of facts in the conduct of the legislative, executive and judicial departments of government. \* \* \* If found to exist and the court determines the privilege is absolute, the action must be dismissed, and if found to be qualified or conditional, then the question of fact relating to plaintiff's proof of malice is usually for the jury under the usual rules of evidence." Mills v. Denny, supra, p. 224–225 of 63 N.W.2d.

See Robinson v. Home Fire & Marine Ins. Co., 244 Iowa 1084, 59 N.W.2d 776, 781–784 (1953), and Aalfs v. Aalfs, 246 Iowa 158, 66 N.W.2d 121, 123 (1954).

The *Robinson* case concerned two allegedly defamatory statements. The first was an intimation of arson and murder made by the defendant insurance company's attorney to a prospective witness in the presence of other parties. The second was a statement, made by an adjustment company's representative to the claimant's attorney, to the effect that they would not pay "for a fire that she has purposely set". The trial court sustained a motion to dismiss an action for slander based on each of these statements. The Iowa Supreme Court held, as to the first statement, that the attorney went beyond the cloak of privilege when he made the statement in the presence of other persons whose knowledge of it was unnecessary. It also held, however, that the second statement was privileged and not actionable.

*Mills* was an action against a city's mayor. The statement in controversy was made in the presence of the city council and of representatives of the press and radio and of other citizens. The trial court denied a motion to dismiss on the ground of privilege. The Iowa Supreme Court affirmed and withheld the protection of absolute privilege from utterances by members of a city council.

■ Although these two opinions concerned non-lawyer defendants, it is apparent from them, we think, that Iowa law recognizes privilege with respect to certain utterances made in connection with judicial proceedings. Emphasis is given to presence of judicial control.

The privilege is narrow. A matter "reasonably pertinent to the issues" is absolutely privileged, even though it is embraced in a statement made to a witness or prospective witness by counsel before trial. All this, so far as the present parties are concerned, appears to be accepted and clear enough.

The plaintiff Johnston argues, however, that there was no litigation pending at the time Cartwright's statement of June 11 was made; that, because the ordered election had been concluded, nothing was then pending before the National Labor Relations Board; that within Cartwright's knowledge there was no judicial proceeding proposed; that there was no attorney-client relationship regarding any litigation; that Cartwright's statement was made while he was acting as an individual and not as a lawyer engaged in litigation or proposed litigation; and that being admitted to practice law does not give one an absolute privilege to defame indiscriminately outside the confines of a pending judicial proceeding.

Both sides rely on the Restatement of the Law of Torts (1938). Section 586 thereof states:

"An attorney at law is absolutely privileged to publish false and defamatory matter of another in communications preliminary to a proposed judicial proceeding, or in the institution of, or during the course and as a part of a judicial proceeding in which he participates as counsel, if it has some relation thereto."

Appended comment speaks of public policy and the amenability of the attorney to the disciplinary power of the court, and further states, in comments a and c:

"The publication of defamatory matter by an attorney is protected not only when made in the institution of the proceedings or in the conduct of litigation before a judicial tribunal, but in conferences and other communications preliminary thereto. * * * The privilege stated in this Section is confined to statements made by an attorney while performing his function as such. Therefore it is available only when the defamatory matter has some reference to the subject matter of the pending litigation, although it need not be strictly pertinent or relevant to any issue involved therein."

We may accept this Restatement authority as representative of Iowa law for it received favorable comment in *Robinson,* p. 525 of 49 N.W.2d, and this area of the Restatement is cited no less than four times in *Mills,* pp. 224–226 of 63 N.W.2d.

In view of the statements and holdings in these two Iowa cases, we are of the opinion that the defendant Cartwright's statement set forth in the newspaper article of June 11, 1964, (if it was defamatory at all, a point which is raised by the defense but which we do not pass upon here) is cloaked with absolute privilege. It is true that it was not uttered at the precise moment litigation between Cartwright or his client Kiowa or his newspaper client, on the one hand, and the UAW or Johnston, on the other, was pending or when judicial control was immediately at hand. But it was made when the heat of controversy remained, when the board election was just concluded, and when an accusation of falsity and libel and a challenge to prove, obviously communicated to Cartwright, had been made by a representative of the UAW. All signs pointed to incipient litigation and to the necessity for protective action.

The Iowa court in *Robinson* clearly extends the rule of privilege to pretrial statements and to a preliminary conference with a prospective witness. It does the same thing in *Mills* when it speaks of the preparation of cases. And § 586 of the Restatement refers pointedly to an attorney's "communications preliminary to a proposed judicial proceeding". We note—and regard it as almost conclusive in this case—that the second statement at issue in *Robinson,* and which was held to be the subject of absolute privilege, was made in an interview which the court de-

**38**

scribed, p. 523 of 49 N.W.2d, as being "before any proceedings were filed in court on the part of the appellant by reason of her claimed fire loss and the policy of insurance".

In any event, Judge Stephenson found that Cartwright's statement was made as attorney for Kiowa, was made when "he was mindful of a probable suit against his client Kiowa", and "was made in the course of his professional office, [which] he then occupied, and that it was made in connection with possible litigation". He held that, under Iowa law, "an attorney is absolutely privileged if he publishes alleged libelous statements providing they are connected with or preliminary to a proposed judicial proceeding or have at least some relation thereto". Certainly, this court could not hold that Judge Stephenson did not reach a permissible conclusion as to Iowa law. We, then, will not interfere with the result he has reached. Chicago, R. I. & P. R. R. v. Chicago & N. W. Ry., 280 F.2d 110, 118 (8 Cir. 1960), cert. denied 364 U.S. 931, 81 S.Ct. 378, 5 L.Ed.2d 364.

This conclusion as to the plaintiff's appeal makes it unnecessary for us to consider Cartwright's claim of procedural irregularities; Cartwright's objection to the use of the contents of his deposition; his contention that the statement attributed to him is not defamatory anyway; and his suggestion that the subject matter of the appeal is preempted by the Labor Management Relations Act, 194‹.

### The defendants' appeal

This relates, as we have noted, to the district court's order of October 22, dismissing the action as to Kiowa and Brown without prejudice and at plaintiff's costs. Inasmuch as the dismissal was effected after Kiowa and Brown had filed their answer to Johnston's complaint, Rule 41(a) (1), Fed.R.Civ.P., is not applicable and Rule 41(a) (2) comes into play. This provides in part that "an action shall not be dismissed at the plaintiff's instance save upon order of the court and upon such terms and conditions as the court deems proper".

The defendants argue that the entry of the dismissal order was error in that it was effected without notice to Kiowa and Brown; that these defendants had been subjected to expense in the preparation of their defense and by the plaintiff's taking of Cartwright's deposition; that, without appropriate notice, they were unable to present to the court their suggestions for protective conditions in the order; that defendant Cartwright was deprived of a "most substantial legal right", namely, the dismissal of the cause of action as against him and the "right to be excluded from the pending action"; that any judgment against the plaintiff for costs does not equate with payment; that the plaintiff seeks to obtain indirectly what he failed to obtain directly, that is, the right to appeal only upon the trial court's specific determination required by Rule 54(b), or by 28 U.S.C. § 1292(b); and that the order effected the dismissal of indispensable parties.

Four preliminary observations are in order: The first is that the defendant Cartwright sustained no deprival of an established right. The judgment of dismissal as to him was subject to review upon appeal sometime. This would be, so long as multiple parties remained in the case, upon an express determination of the kind contemplated by Rule 54(b), or upon the entry of judgment as to all claims and as to the rights and liabilities of all parties. Cartwright's judgment therefore had not, in some mysterious fashion, attained ultimate finality as to which no right to appeal any longer existed.

The second is that § 1292(b) now has no pertinency here. That section has to do with interlocutory and not otherwise appealable orders and not with one which, as this court held in its opinion at 344 F.2d 773, has attained finality for appeal purposes.

The third is that we perceive no merit in the suggestion as to indispensable parties. The statement of June 9 was one by Kiowa and Brown. That of June 11 is asserted to be a republication by Cartwright. These are different acts.

A republication naturally relates to an earlier statement but it does not make the initial authors indispensable parties to a claim against the republisher. If torts were committed, they were separate ones.

The fourth is that the defendants appear not to be arguing that Rule 41(a) (2) is confined to a dismissal of an "action", rather than of a claim or of a cause of action, and is not to be utilized to effect dismissal of parties who are not misjoined. Some authority would support that argument, if it were made. Harvey Aluminum, Inc. v. American Cyanamide Co., 203 F.2d 105, 108 (2 Cir. 1953), cert. denied 345 U.S. 964, 73 S.Ct. 949, 97 L.Ed. 1383. See Philip Carey Mfg. Co. v. Taylor, 286 F.2d 782, 785 (6 Cir. 1961), cert. denied 366 U.S. 948, 81 S.Ct. 1903, 6 L.Ed.2d 1242. See 2B Barron & Holtzoff, Federal Practice and Procedure, § 911, pp. 102–03 (Rules Ed. 1961). We would be inclined to favor, however, the liberality of the contrary view espoused in other cases and typified by Professor Moore as "the better view". 5 Moore's Federal Practice, Par. 41.06–1, p. 1087 (2d ed. 1964); Young v. Wilky Carrier Corp., 150 F.2d 764 (3 Cir. 1945), cert. denied 326 U.S. 786, 66 S.Ct. 470, 90 L.Ed. 477, including Judge Goodrich's opinion in concurrence; United States v. E. I. du Pont de Nemours & Co., 13 F.R.D. 490, 494 (N.D. Ill. 1953); Fair v. Trans World Airlines, Inc., 22 F.R.D. 60, 63 (E.D.Ill. 1957). Yet it may not be material whether the court acts under Rule 15(a) which relates to amendments, or Rule 21 which concerns misjoinder, or Rule 41(a) (2). See Broadway & Ninety-Sixth St. Realty Corp. v. Loew's Inc., 23 F.D.R. 9, 11 (S. D. N.Y. 1958); Southern Elec. Generating Co. v. Allen Bradley Co., 30 F.R.D. 135 (S.D. N.Y. 1962).

Our main concern on the defendants' appeal centers in the asserted absence of notice of the plaintiff's motion to dismiss and the consequent lack of opportunity for the defendants at least to make known their thoughts about properly protective provisions.

After the entry of the order of October 22 Kiowa and Brown moved to set aside that order of dismissal. It was conceded in their motion papers that their counsel had been advised by plaintiff's counsel that Johnston "was considering whether or not to ask for such dismissal" and that the defendants' counsel "would be advised" when a decision as to this was made. The defendant Cartwright, moreover, had actual knowledge of the motion to dismiss as to Kiowa and Brown, for, although complaining about the shortness of time, he filed a written resistance to that motion and appeared in active opposition at the hearing thereon. The court was advised of the absence of formal notice to Kiowa and Brown. It expressed concern, however, that the plaintiff's time for appeal as to defendant Cartwright was about to expire, and that there was no longer time to give formal notice. It "found nothing whereby defendants would be prejudiced save for the possibility of a second suit" and observed that, under Rule 41(d), it could protect the defendants from additional costs in the event of a second suit.

It has been said that Rule 41(a) (2) contemplates a motion, which, under Rule 5(a), is to be served upon the adverse party, and a hearing. Diamond v. United States, 267 F.2d 23, 25 (5 Cir. 1959), cert. denied 361 U.S. 834, 80 S.Ct. 85, 4 L.Ed.2d 75; Wilson & Co. v. Fremont Cake & Meal Co., 83 F.Supp. 900, 902 (D. Neb. 1949).

It is true that in the district court Cartwright was represented by counsel different from those who represent Kiowa and Brown. But Cartwright's own law firm is counsel for Kiowa and Brown. It would appear, therefore, that, as a practical matter, Cartwright's knowledge, as a defendant, of Johnston's motion to dismiss meant that his law firm also had that knowledge.

Dismissal under Rule 41(a) (2) is a matter for the discretion of the trial court. Larsen v. Switzer, 183 F.2d 850, 851 (8 Cir. 1950), cert. denied 340 U.S. 911, 71 S.Ct. 291, 95 L.Ed. 658; Barnett

v. Terminal R. R. Ass'n, 200 F.2d 893, 894 (8 Cir. 1953), cert. denied 345 U.S. 956, 73 S.Ct. 938, 97 L.Ed. 1377; Reynolds v. Wabash R. R., 236 F.2d 387, 390 (8 Cir. 1956); 5 Moore's Federal Practice, Par. 41.05[1], p. 1055 (2d ed. 1964). The question, thus, for our purposes, is whether the district court has abused that discretion.

While we do not condone careless practice or oversight, we cannot say that, under all the circumstances here, the trial court abused its discretion in granting the motion to dismiss. Protection is afforded defendant-litigants such as Kiowa and Brown under Rule 41 (d) and they presumably were free to seek more specific protective relief from the district court even after the order of dismissal as to them had been entered. The record suggests no such attempt on their part, other than the general one to set aside the dismissal order of October 22.

The district court is affirmed on both appeals.