53 F.3d 330
NOTICE: Fourth Circuit I.O.P. 36.6 states that citation of unpublished dispositions is disfavored except for establishing res judicata, estoppel, or the law of the case and requires service of copies of cited unpublished dispositions of the Fourth Circuit.
 VERNON CARLTON SALES, INCORPORATED; John V. Dalton,
Plaintiffs-Appellants,
v.
SSMC, INCORPORATED, N.V., a Netherlands Antilles
corporation; International Semi-Tech
Microelectronics, Incorporated, a
Canadian corporation,
Defendants-Appellees.
VERNON CARLTON SALES, INCORPORATED; John V. Dalton,
Plaintiffs-Appellees,
v.
SSMC, INCORPORATED, N.V., a Netherlands Antilles
corporation, Defendant-Appellant,
and
International Semi-Tech Microelectronics, Incorporated, a
Canadian corporation, Defendant.
 Nos. 94-1670, 94-1693.
 United States Court of Appeals, Fourth Circuit.
 
 for the Middle District of North Carolina, at Greensboro.
 William L. Osteen, Sr., District Judge.
 (CA-91-84-2, CA-91-84-1) Argued: April 4, 1995.
Decided: May 5, 1995.
 ARGUED: David B. Puryear, Jr., MOORE & BROWN, Winston-Salem, NCa, for Appellants. James A. Medford, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, NC, for Appellees. ON BRIEF: R.J. Lingle, MOORE & BROWN, Winston-Salem, North Carolina, for Appellants. Mark R. Smith, SMITH, HELMS, MULLISS & MOORE, L.L.P., Greensboro, NC, for Appellees.
 Before ERVIN, Chief Judge, and RUSSELL and LUTTIG, Circuit Judges.
 OPINION
 PER CURIAM:
 
 
 1
 Appellant Vernon Carlton Sales, Inc. ("VCS") challenges several adverse judgments and evidentiary rulings of the United States District Court for the Middle District of North Carolina, arising from VCS' contract dispute with appellee SSMC, Inc., N.V. ("SSMC"). Finding no error, we affirm. We likewise find no merit in SSMC's claim on appeal that the district court erred in failing to award SSMC prejudgment interest on the amount of damages assessed.
 
 I.
 
 2
 VCS and SSMC entered into two contracts in 1989. The first, the License Agreement, gave VCS the exclusive right, for a period of three years, to manufacture and sell an electronic fan control, which SSMC had developed and patented, with the use of SSMC's "SINGER" trademark, in exchange for 15% of the royalties from VCS' net sales of the product. The second contract was in the form of a letter agreement that SSMC's then vice-president of engineering, Manfred Laidig, sent to VCS's president and sole shareholder, John Dalton, on April 6, 1989. The Letter Agreement, which Dalton signed on June 21, obligated VCS to reimburse SSMC for SSMC's purchase of the components necessary to build the fan control, "within 30 days of VCS' receipt of [SSMC's] invoice." J.A. at 147.
 
 
 3
 In the Summer of 1989, and prior to the start of manufacturing, the parties' relationship began to break down. After VCS unsuccessfully sought to revise the agreements, SSMC accused VCS of not being able to perform on the License Agreement. J.A. at 166-67. VCS responded that it was "ready and willing to perform," J.A. 168-70, but SSMC terminated the License Agreement nonetheless, J.A. at 171-73.
 
 
 4
 VCS filed suit in federal court, asserting diversity jurisdiction and alleging fraud, negligent misrepresentation, breach of contract, and unfair and deceptive trade practices in violation of N.C. Gen.Stat. Sec. 75-1.1. For breach of contract, VCS sought monetary damages (First Claim for Relief), J.A. at 24, and specific performance "in addition to or in lieu of damages," (Sixth Claim for Relief), J.A. at 32-33. SSMC claimed in defense that VCS had anticipatorily breached the License Agreement by failing to give adequate assurances of performance. SSMC also counterclaimed for breach of the License Agreement and for breach of the Letter Agreement.
 
 
 5
 SSMC moved for summary judgment. The district court granted judgment against VCS on all of its claims, except the two breach of contract claims. As to those claims, the court ruled that the evidence created a genuine issue of material fact regarding which party breached the License Agreement first. J.A. at 85.
 
 
 6
 On the same date, the court, by separate opinion, decided VCS' motion for partial summary judgment. In that motion, VCS had argued that paragraph 23 of the License Agreement, which SSMC maintained limited any potential recovery by VCS to zero, was unconscionable. The court found that paragraph 23's limitation-of damages clause did limit any damages claimed by VCS to zero, but that the clause was not unconscionable.
 
 
 7
 VCS then moved that the court alter, amend, or clarify its opinions. The district court recognized the apparent confusion--that "the two opinions read together, for all practical purposes, dismiss Plaintiffs' claims [sic] for money damages without explicitly stating that result." J.A at 118. The court then stated unequivocally that the limitation-of-damages clause was not ambiguous and that "the remedy of monetary damages is no longer available to Plaintiffs and any claim of damages by Plaintiffs for breach of the Licensing Agreement is hereby dismissed with prejudice." J.A. at 117-21.
 
 
 8
 VCS then moved for, and the court granted, voluntary dismissal of its breach-of-contract claim seeking specific performance (the Sixth Claim), pursuant to Fed.R.Civ.P. 41(a)(2). J.A. at 122.
 
 
 9
 The case proceeded to trial upon SSMC's counterclaims. During trial, the court determined, and SSMC conceded, that it had not put forth any evidence that it suffered damages through VCS' alleged anticipatory breach of the License Agreement. As to the counterclaim for reimbursement under the Letter Agreement, SSMC offered, as evidence of performance and damages, a computer printout which purportedly summarized SSMC's accounts payable to various vendors ("Exhibit 70"). Over VCS' objections, the exhibit was admitted. At the close of all evidence, the district court denied VCS' motion for judgment as a matter of law, but granted SSMC's motion for the same. The court entered judgment under Rule 50, finding that VCS was liable under the Letter Agreement and assessing damages at an amount not less than $151,147.60.
 
 
 10
 VCS now appeals, raising several challenges to the court's rulings with regard to both the License Agreement and Letter Agreement. SSMC cross-appeals, claiming that the district court erred in failing to award SSMC prejudgment interest.[1] II.
 
 
 11
 VCS argues first that the district court erred in granting summary judgment for SSMC on VCS' claim for damages for SSMC's alleged breach of the License Agreement.[2] The court found as a matter of law that paragraph 23 of the License Agreement barred any monetary recovery, even if VCS could prove that SSMC breached the contract. Paragraph 23 reads:
 
 
 12
 SSMC's total financial exposure arising out of any and all claims or causes of action brought hereunder against SSMC by VCS ... shall not exceed the total payments received hereunder by SSMC, subject to paragraph 15 hereof. J.A. at 163. Paragraph 15 provides:
 
 
 13
 VCS shall collect payment for its customers, pay the manufacturer directly, and remit to SSMC on a monthly basis royalty payments equal to 15% of the net selling price to its customers.
 
 
 14
 J.A. at 162. The district court gave the provision its most natural construction: the phrase "subject to paragraph 15 hereof" modifies "the total payments received hereunder by SSMC," such that the clause "unambiguously limits the damages of Defendant SSMC to the extent of any royalty payments it receives." J.A. at 119-20. Since there had been no royalty payments, VCS potential recovery was zero.
 
 
 15
 VCS offers another construction of the contract language that it claims is reasonable. According to VCS, the clause "subject to paragraph 15" should be read as a condition precedent to operation of paragraph 23's limitation on financial exposure. That is, SSMC's liability is limited only if VCS has already collected payment, paid its manufacturer, and remitted royalty payments to SSMC. Appellant's Br. at 23-24. Since those events did not occur, VCS argues, paragraph 23 does not apply.
 
 
 16
 We do not find VCS' construction reasonable. See New Castle Co. v. Hartford Accident & Indem. Co., 970 F.2d 1267, 1270 (3d Cir.1992), cert. denied, 113 S.Ct. 1846 (1993). It would not have been sensible for SSMC to have contracted to expose itself to unlimited liability until VCS sold the first device, but for that exposure to drop to 15% of the royalties once the fans were successfully marketed. We believe that SSMC would not have contracted for this result, and it certainly would not have done so by employing the language in paragraph 23. The district court, therefore, did not err in finding VCS' potential for monetary recovery for breach of contract was limited to zero and granting summary judgment on the damages claim accordingly.[3]
 
 III.
 
 17
 VCS argues next that the district court erred in excluding, under the parol evidence rule, certain testimony intended to show that the express terms of the Letter Agreement did not accurately reflect Laidig's and Dalton's agreement regarding VCS' obligation to reimburse SSMC for the components. See J.A. at 919-23, 942-44, 950, 1138-1160, 1174-79, 1183-88. Under North Carolina law, the parol evidence rule prohibits the admission of parol evidence to vary, add to, modify, or contradict a written instrument intended to be the final integration of a transaction. See Hall v. Hotel L'Europe, Inc., 318 S.E.2d 99, 101 (N.C.App.1984); N.C. Gen.Stat. Sec. 25-2-205. The district court properly concluded that the Letter Agreement was "a document complete in itself" and "not ambiguous by its own terms," J.A. at 943; see J.A. at 1147, and, therefore, that testimony concerning agreements or understandings dating prior to or contemporaneous with Dalton's execution of the Letter Agreement on June 21, 1989 was not admissible under the parol evidence rule. J.A. at 942-43.
 
 
 18
 The court was willing to accept reliable evidence of modifications or agreements allegedly made after the document's execution. See Munther-Ballenger v. Griffin Elec. Consultants, 397 S.E.2d 247, 250 (N.C. Ct.App.1990) (parol evidence rule does not bar evidence of oral modifications made subsequent to the written contract). In fact, Dalton was permitted to tell the jury that during a meeting with Laidig in July 1989, they "discussed the fact that [the Letter Agreement's] language was not our agreement," and that VCS would not be required to pay for the parts until they were incorporated into the finished product. J.A. at 950. The court, however, excluded Laidig's testimony about the agreement, and its alleged modification, because Laidig was unable to specify whether the modification was made prior to or after Dalton signed the contract. J.A. at 1148-53 (indicating modification was probably before June). Excluding this testimony was not error.
 
 IV.
 
 19
 Over VCS' objections, the district court permitted SSMC to introduce into evidence Exhibit 70, a computer printout that purported to summarize what SSMC had paid to vendors for the components that were delivered to VCS or its manufacturer, pursuant to the Letter Agreement. J.A. at 207a-g. The document was offered to demonstrate performance and to prove the amount of damages. VCS argues on appeal that the district court abused its discretion in admitting this evidence because it was inadmissible hearsay. We disagree. The document falls squarely within the "business record" exception to the hearsay rule. SSMC's witness, Mr. Hudyma, testified at length and with personal knowledge about each element necessary to establish that the exhibit was a business record, as set forth in Federal Rule of Evidence 803(6). J.A. at 829-56. VCS' arguments to the contrary are without merit.[4]
 
 V.
 
 20
 At the close of trial, the district court granted SSMC's motion for judgment as a matter of law on its counterclaim for breach of the Letter Agreement. The court found, in part, that the Letter Agreement did not come under the Uniform Commercial Code, J.A. at 1240, and, therefore, any modification of the agreement's written terms would have required additional consideration, see Anthony Tile & Marble Co. v. H.L. Coble Constr. Co., 193 S.E.2d 338, 340-42 (N.C.App.1972). Since "no evidence of any consideration" was presented, J.A. at 1240, and it was undisputed that VCS failed to comply with the written terms of agreement, the court concluded that judgment as a matter of law was appropriate. VCS argues that this conclusion was in error because the Letter Agreement should have been construed pursuant to the U.C.C.
 
 
 21
 It is not necessary for us to resolve whether or not the Letter Agreement was governed by the U.C.C., because even if the U.C.C. applies, and hence VCS did not have to show consideration to support the modification, see N.C. Gen.Stat. Sec. 25-2-209(1), VCS still failed to present sufficient evidence that the parties had orally modified their contract. Under North Carolina law, proof of an oral agreement that modifies a written contract must be by clear and convincing, admissible evidence. See Anthony Tile, 193 S.E.2d at 340; Lambe-Young, Inc. v. Cook, 320 S.E.2d 699, 702 (N.C. Ct.App.1984); Ford Motor Co. v. Jordan, 168 S.E.2d 229, 232 (N.C. Ct.App.1969). In this case, the only evidence presented to the jury that the parties had modified the Letter Agreement, after it was signed on June 21, 1989, was Dalton's testimony concerning his conversation with Laidig during the week of July 11th. J.A. at 950. We believe this testimony is insufficient evidence of a binding modification, in part, because Dalton admitted at trial that Laidig had told him during the first week of July, prior to the alleged modification discussion, that he was a "lame duck" at the company and "the decision-making ability was out of his hands." J.A. at 1034. Dalton apparently knew that Laidig did not have the authority to amend their contractual agreement when the alleged modification occurred. We find that under these circumstances, Dalton's testimony was certainly not clear and convincing evidence that the agreement had been validly modified. Since VCS failed to comply with the contract as written, judgment as a matter of law on SSMC's counterclaim was proper.[5]
 
 VI.
 
 22
 On its cross-appeal, SSMC argues that the district court erred in failing to award prejudgment interest on its damages of $151,147.60 as a matter of law. See N.C. Gen Stat. Sec. 24-5(a).
 
 
 23
 When the district court was ruling on the Rule 50 motion, the court asked SSMC's counsel whether "a verdict of $150,000 [would be] sufficient to you." J.A. at 1240. The attorney consulted with his client and responded that "we would be satisfied with that." The court then announced its findings and rendered its judgment at $151,147.60. J.A. at 1240-43. After which, SSMC's attorney commented: "I don't know that we will, but I take it that you don't want us to raise any question of pre-judgment interest." J.A. at 1244. To which the court answered: "No. I want us to be satisfied with that figure, or let the jury decide." And counsel responded, "That's fine." J.A. at 1244. We find that through this colloquy--in which SSMC agreed to accept a fixed sum and recognized that prejudgment interest should be considered as included in that amount or would not be forthcoming--SSMC waived any legal right that it may have had to prejudgment interest.[6]
 
 CONCLUSION
 
 24
 For the reasons stated herein, we affirm the judgment of the district court.
 
 
 25
 AFFIRMED.
 
 
 
 [1]
 International Semi-Tech Microelectronics, Inc. ("ISTM") is not a proper party to this appeal, despite its appearance in the caption. The district court dismissed ISTM from the case. J.A. at 95-95
 
 
 [2]
 SSMC claims that this issue was rendered moot by VCS' voluntary dismissal of its claim for specific performance. SSMC apparently argues that because VCS moved for, and the district court granted, the dismissal of VCS' only remaining cause of action pursuant to Rule 41(a)(2), and that rule speaks in terms of dismissal of "an action" (as opposed to a claim, cause of action, or single defendant), the entire action has been dismissed and VCS cannot challenge the district court's rulings on summary judgment. While Rule 15 may have been the preferred procedural vehicle to eliminate a single claim, see J.W. Moore, J.D. Lucas & J.C. Wicker, Moore's Federal Practice, p 41.06-1, 41-82--41-84 (2d ed.1992), Gronholz v. Sears, Roebuck & Co., 836 F.2d 515 (Fed. Cir.1987) (district court construed a Rule 41(a)(2) motion as a Rule 15 motion, where the plaintiff seeks to dismiss some but not all claims), we will not permit VCS' and the district court's procedural error to preclude VCS' appeal. See Johnson v. Cartwright, 355 F.2d 32, 39 (8th Cir.1966) ("[I]t may be immaterial whether the court acts under Rule 15(a) which relates to amendments, or Rule 21 which concerns misjoinder, or Rule 41(a)(2)"). The district court clearly believed that its dismissal of the Sixth Claim for specific performance would have no effect on the claims adjudicated on summary judgment, or on VCS' right to appeal therefrom. See J.A. at 123 (on same date it approved the voluntary dismissal, the court noted in separate order that "the parties will be in a position to appeal in the usual manner."). Since the terms and conditions of dismissal under Rule 41(a)(2) were within the discretion of the court, we find VCS' claim is not moot
 
 
 [3]
 VCS also argues that the district court erred in not finding the limitation on damages unconscionable. We find this claim meritless for the reasons discussed in the district court's opinion, J.A. at 97-101
 
 
 [4]
 VCS raises two additional arguments relating to Exhibit 70. First, VCS claims that the district court erred in denying its motion for judgment as a matter of law on SSMC's counterclaim. The sole basis of its motion was VCS' contention that SSMC had failed to produce admissible evidence to support essential elements of its claim, namely, the fact and amount of damages. Having concluded that Exhibit 70 was admissible evidence to establish those elements, we affirm the district court's judgment denying VCS' motion
 In granting SSMC's motion for judgment as a matter of law, the court assessed the amount of damages that VCS owed SSMC at not less than $151,147.60, the sum of the figures on the computer printout. VCS argues that this ruling was in error because "SSMC's only evidence of the fact that it ever incurred any expenses for parts ... was the inadmissible exhibit 70." Appellant's Br. at 50. For the reasons discussed above, Exhibit 70 was admissible and reliable evidence of damages. Moreover and contrary to VCS' contention, a substantial amount of additional evidence was offered to prove SSMC's damages. See, e.g., J.A. at 741-44, 1020, 1246-54, (showing that SSMC expended $198,857.87); J.A. at 146-59 ($254,742); J.A. at 1021 ($184,000); J.A. at 3, 164, 838-39, 1036.
 
 
 [5]
 VCS also challenges the Rule 50 judgment by arguing that the district court erred in not allowing the jury to consider evidence that the Letter Agreement was modified or evidence, relating to VCS' affirmative defenses, that SSMC had breached the License Agreement. For the reasons discussed in part III, supra, we find this claim meritless. Likewise, the district court did not err in refusing to admit evidence going to the proof of VCS' affirmative defenses, because all the defenses related to SSMC's alleged breach of the License Agreement and, under the express terms of the Letter Agreement, SSMC's breach of any other agreement was simply irrelevant. J.A. at 147 ("VCS further agrees that this payment obligation is absolute and unconditional and is not contingent upon any agreement which VCS has or may enter into regarding the Product.")
 
 
 [6]
 We have considered all additional claims that VCS raises on appeal and find them also without merit