**362 P.2d 984**

**Jack ADAMS, Plaintiff-Appellant,**

**v.**

**Frank TATSCH, Defendant-Appellee.**

**No. 6739.**

Supreme Court of New Mexico.

June 28, 1961.

Catron & Catron, Santa Fe, for appellant.

Keleher & McLeod, John B. Tittmann, Russell Moore, Albuquerque, for appellee.

MOISE, Justice.

Appellant has filed a motion for rehearing and in support thereof shows the court that on December 15, 1959, the motion seeking allowance of an appeal and a form of order allowing appeal prepared for signature by the Judge were mailed to the Judge at his office in Aztec, New Mexico. On December 21, 1959, the Judge signed the order and mailed it together with the motion and a covering letter of transmittal to the court clerk in Santa Fe. At the same time a copy of the letter of transmittal was mailed to counsel for each of the parties to the action. Appellant's counsel received his copy in the mail on December 22, 1959. No reason is evident why the documents were not shown filed by the clerk until December 24, 1959. A number of possibilities present themselves. Was the letter to the clerk delayed in the mail or in the post office, either in Aztec or Santa Fe, because of the Christmas rush? Was it received in the clerk's office but misplaced for a day or two or for some other reason not shown filed until December 24, 1959? It is evident that it should have been received on December 22, 1959, the day appellant's counsel received his copy of the letter or on December 23 at the latest, and

under ordinary circumstances would have been filed in ample time to be within the 30 days allowed for taking an appeal. Supreme Court Rule 5, subdivision 1 (§ 21–2–1(5), subd. 1, N.M.S.A.1953).

Under this rule, failure to obtain timely allowance of an appeal is jurisdictional. Chavez v. Village of Cimarron, 65 N.M. 141, 333 P.2d 882. Although the record as originally presented to us disclosed the motion and order allowing the appeal to have been filed one day late, without any explanation or reason for the delay, it now appears that counsel for appellant were diligent in their efforts and acted within ample time to accomplish timely allowance of the appeal. It is further shown that the order was properly mailed by the court with more than enough time for it to have been received by the clerk before the 30 days elapsed. Under such circumstances there is a presumption of its receipt in the due course of mail. Associated Petroleum Transport, Limited v. Shepard, 53 N.M. 52, 201 P.2d 772. There being no proof to the contrary, the fact it was filed one day late does not overcome this presumption. The reason for the delay in filing being unexplained we do not think appellant should be held responsible. Central Paper Co. v. Commissioner of Internal Revenue, 6 Cir., 199 F.2d 902.

In Jaritas Live Stock Co. v. Spriggs, 42 N.M. 14, 74 P.2d 722, we held in a case where the motion for an appeal was mailed to the trial judge on the last day for allowing an appeal and the order signed by the judge the day after the three month period then provided for appeal had expired, that the appellant having filed his application within time and having then proceeded without delay to have the order allowing the appeal signed, he was within the spirit of the rule and the motion to dismiss the appeal was denied.

In the case of William K. Warren Foundation v. Barnes, 67 N.M. 187, 354 P.2d 126, 127, we referred to Jaritas Live Stock Co. v. Spriggs, supra, as "rather doubtful authority," but we also said concerning appellants' efforts there that any claim that they had proceeded "without delay" was negated by the amount of time that elapsed between the filing of the motion and the entry of the order. The language would seem to recognize that under circumstances where counsel had proceeded diligently and "without delay" and where, as here, nevertheless, the appeal was not shown on the record to have been allowed until the thirty-first day after entry of the judgment appealed from, the failure would not be fatal to appellant's right nor deprive us of jurisdiction.

Although we would reiterate that whereas we entertain considerable reservation concerning the application given to the rule under the facts of Jaritas Live Stock Co. v. Spriggs, supra, as indicated in what we said in William K. Warren Foundation

v. Barnes, supra, we are clear that the rule as there announced is a proper one to be applied under the facts here present. Accordingly, the opinion heretofore filed dismissing this appeal is withdrawn.

The plaintiff-appellant (hereinafter referred to as plaintiff) sued the defendant-appellee (hereinafter referred to as defendant) for damages claimed to have resulted from false statements and charges allegedly maliciously made by defendant about plaintiff.

The plaintiff in his complaint alleged that he was a highway contractor and that pursuant to contract with the State of New Mexico, he had constructed a project known as the Lordsburg Urban Highway Project which was completed about January 29, 1958. Plaintiff further alleged that defendant was a member of the Highway Commission of the State of New Mexico, and that at a meeting of the Commission held April 23, 1959, and with members of the press present, he displayed a section or piece of concrete which he asserted was taken from a certain drainage structure in the Lordsburg Project built by plaintiff, and further stated that the specifications for the structure called for and the State of New Mexico was paying for 6 inches of concrete of certain specifications and reinforced with steel wire, whereas as evidenced by the section of the structure displayed the thickness was 1¼ to 2 inches and there was no steel wire reinforcing, and further

charged that the fault was plaintiff's. It was further alleged that defendant asked that all of plaintiff's privileges be withdrawn and that he be barred from bidding on future highway jobs, and that defendant stated that he felt the plaintiff was liable to civil suit and that the actions of plaintiff were "premeditated, malicious and done with intent to defraud the state and federal government."

Plaintiff further alleged that the charges as made were false, defamatory per se, "were recklessly and wilfully made with intent to injure plaintiff, both in his character and in his business," and the publication by defendant amounted to libel from which plaintiff suffered damages to the extent of $250,000.

Defendant filed a motion to dismiss on the ground that the complaint failed to state a claim upon which relief could be granted. After argument, the motion was sustained, whereupon plaintiff requested permission to amend his complaint by adding a new paragraph thereto reading as follows:

"That the charges so made by defendant against plaintiff were not relevant or pertinent to any inquiry or action with respect to, or investigation of, the said Lordsburg Urban Highway Project, or plaintiff's work on or connection with said project, or the performance by him of his contract for the construction thereof, then pending

before said Commission, the said Highway Department or any other State Agency, Department or Branch of government, and that said charges were so made, under the circumstances alleged, recklessly, wilfully and maliciously, and outside of the scope of any duty or authority imposed upon defendant or vested in him by law or otherwise, whether as a member of said Commission or otherwise."

Leave to amend was denied and an order entered dismissing plaintiff's complaint with prejudice. This appeal followed.

Accordingly, we have presented for decision the question of whether or not defendant, a member of the State Highway Commission is immune from liability for slanderous statements made in a meeting of the commission with the press present and at a time when nothing concerning the matter about which the statements were made was pending before the commission.

Defendant claims that he is absolutely immune under the law and cites the rule as stated in 3 Restatement of the Law of Torts, § 591, which reads as follows:

"The President of the United States and the Governor of any State or Territory thereof, cabinet officers of the United States and the corresponding officers of any State or Territory thereof are absolutely privileged to publish false, and defamatory matter of another in the exercise of an executive function, if the matter has some relation to the executive proceeding in which the officer is acting.

"Comment:

"a. Complete freedom in performing the duties of the important executive offices of the Nation and State requires the absolute privilege to publish defamatory matter of others when such publications are incidental to the performance of the duties of the office. The public welfare is so far dependent upon a reasonable latitude of discretion in the exercise of functions of high executive offices that the incumbents thereof may not be hindered by the possibility of a civil action for defamation in connection therewith.

"b. The privilege stated in this Section is absolute. Hence no action for defamation can be maintained against any one of the designated executive officers irrespective of his purpose in making the publication * * *."

This court, in Stewart v. Ging, 64 N.M. 270, 327 P.2d 333, while concluding that absolute privilege was not present under the facts of that case, cited Prosser on Torts. The rule stated by Prosser in his work (2nd Ed.), § 95, is as follows:

"The defendant may be privileged to publish defamation for the protection or furtherance of a public or private

interest recognized by the law as entitled to such protection * * *

"a. Those absolutely immune from responsibility, without regard to the defendant's purpose or motive, or the reasonableness of his conduct. These include:

"(1) Judicial proceedings.

"(2) Legislative proceedings.

"(3) Proceedings of executive officers charged with responsibility of importance. * * *"

The landmark case announcing the rule in this country is Spalding v. Vilas, 161 U.S. 483, 16 S.Ct. 631, 637, 40 L.Ed. 780, where the Attorney General of the United States, a member of the President's cabinet, was held to enjoy absolute privilege. The rule was there announced that a cabinet officer was absolutely privileged to publish false and defamatory matter about another in the exercise of his executive functions if the matter was in some way related to the executive proceeding in which the official was acting. The following was stated as the basis for the rule:

"In exercising the functions of his office, the head of an executive department, keeping within the limits of his authority, should not be under an apprehension that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages. It would seriously cripple the proper and effective administration of public affairs as intrusted to the executive branch of the government, if he were subjected to any such restraint. He may have legal authority to act, but he may have such large discretion in the premises that it will not always be his absolute duty to exercise the authority with which he is invested. But if he acts, having authority, his conduct cannot be made the foundation of a suit against him personally for damages, even if the circumstances show that he is not disagreeably impressed by the fact that his action injuriously affects the claims of particular individuals."

A few of the cases in federal court which have followed Spalding v. Vilas, supra, are Smith v. O'Brien, 66 App.D.C. 387, 88 F.2d 769, where the Chairman of the U.S. Tariff Commission was held to enjoy absolute privilege; Glass v. Ickes, 73 App.D.C. 3, 117 F.2d 273, 132 A.L.R. 1328, involving the Secretary of Interior, a member of the President's Cabinet; and Gregoire v. Biddle, 2 Cir., 177 F.2d 579, where two successive directors of the Enemy Alien Control Unit of the Department of Justice and the District Director of Immigration at Ellis Island, none of whom were cabinet members were held entitled to absolute privilege.

**452**

The Supreme Court of the United States in the case of Barr v. Matteo, 360 U.S. 564, 79 S.Ct. 1335, 3 L.Ed.2d 1434, held the Acting Director of the Office of Rent Stabilization, was protected under the rule of absolute privilege. See also Howard v. Lyons, 360 U.S. 593, 79 S.Ct. 1331, 3 L.Ed. 2d 1454, holding the Commander of a Naval shipyard absolutely privileged in respect to civil liability. Plaintiff attempts valiantly to demonstrate that the law as announced in these cases should not apply in the instant case. However, as we analyze the holdings, the principles announced are directly applicable, and plaintiff's arguments fail to convince us otherwise.

There are also decisions from state courts holding certain state officials to be entitled to protection of the rule. The most often quoted case is that of Matson v. Margiotti, 371 Pa. 188, 88 A.2d 892, involving the State Attorney General. See also Hardy v. Vial, 48 Cal.2d 577, 311 P.2d 494, 66 A.L.R.2d 739; Hughes v. Bizzell, 189 Okl. 472, 117 P.2d 763. Other cases are referred in the note appearing in 132 A.L.R. 1340, and in a very extensive discussion of Developments in the Law of Defamation in 69 Harvard L.R. 875 (1956), absolute privilege being discussed commencing at page 917. We note in passing that the doctrine has been severely criticized. Two of the more recent articles of this nature are to be found in 55 Mich.L.R. 201 (1956) and 47 Cal.L.R. 303 (1959).

It remains for us to determine if a member of the highway commission is such an officer of the state as is protected by the rule and if the statements complained about were made in the exercise of an executive function and under the proposed amendment to the complaint if the remarks were pertinent to the proceeding in which defendant was acting. Also, we must decide if the presence of representatives of the press at the meeting in any way alters the rule.

The State Highway Commission, how it shall be constituted, how the members shall be appointed, their powers and duties, are all provided for in Art. V, Sec. 14, N.M. Const. Although appointed by the Governor with the advice and consent of the Senate, except when appointed to fill a vacancy or where the Governor fails to act, the members cannot be removed during their terms "except for incompetence, neglect of duty or malfeasance in office." The commission has broad and important powers provided for in subsection A of Art. V, Sec. 14:

"The state highway commission is empowered and charged with the duty of determining all matters of policy relating to the design, construction, location, and maintenance of state highways and public roads. It shall

have general charge and supervision of all the highways and bridges which are constructed or maintained in whole or in part with state aid. It shall have charge, subject to such regulation as may hereafter be provided by law, of all matters pertaining to the expenditure of highway funds. It shall have the power to institute any legal proceedings deemed necessary to the exercise of its powers. It shall have all powers which are now or which may hereafter be conferred on it by law."

We do not see how it could possibly be asserted that a member of the commission having the constitutional powers set forth above is not of the rank or importance of officers mentioned in 3 Restatement of Law of Torts, § 591, quoted supra. He is a constitutional officer having duties of the greatest importance to the state. If it can be said that New Mexico has any officers having rank comparable to that of cabinet members in the federal government we can think of none that would more properly be so classified. We are not impressed with plaintiff's argument that whereas the commission had certain powers and duties, the individual members of the commission could not be considered as important executive officers individually. At least while sitting as a member in a meeting of the commission the individuals certainly enjoy all the privileges and immunities of the body as a whole. While so acting they are collectively the heads of the highway department. Accordingly, we do not follow plaintiff's argument that whereas the immunity applies to "heads of executive departments," it does not apply to defendant. In our view, he is clearly within the described class. Prosser on Torts (2d Ed.) § 95.

■ Were the statements made in the exercise of an executive function and were they related to the proceeding in which defendant was acting? It appears that the remarks were made at an open meeting of the commission, and that the subject matter concerning which the statements were made was not on the agenda of the meeting. The matter had been closed for some time and was reopened by defendant on his own motion on the occasion in question.

We are convinced that there was a proper relation between the remarks and matters properly subject to consideration by the commission. To accept plaintiff's argument would mean there would be no practical way for the commission to reopen and reconsider matters which had been previously passed upon. Of course, it might have been possible for defendant to request the secretary of the commission to put an item on the agenda of the meeting and for defendant to then present his views in connection with the matter. If we understand plaintiff's argument it is to

the effect that such a procedure would be necessary to make the meeting one held concerning matters properly to be discussed and in connection with which immunity could be claimed. We do not agree that following such a procedure could or would alter the situation. The real question is, was the subject matter pertinent and relevant to the duties and responsibilities of the commission and the commissioners under the law? Spalding v. Vilas, supra; Glass v. Ickes, supra; Barr v. Matteo, supra; Cooper v. O'Connor, 69 App.D.C. 100, 99 F.2d 135, 118 A.L.R. 1440.

In the instant case, where as we understand it, the commission had considered whether plaintiff had properly performed his contract and had concluded that he had, and had paid him in full, there must be some way in which evidence indicating otherwise could be brought to the attention of the commission if the same became available. That it is desirable that every instance of breach of public confidence and trust or violation of public obligations be brought to account we do not think can be successfully denied. It is the right and duty of every member of the commission to call attention to every such instance affecting the highway department. In doing so it is important that he be under no apprehension "that the motives that control his official conduct may at any time become the subject of inquiry in a civil suit for damages." Spalding v. Vilas, supra

[161 U.S. 483, 16 S.Ct. 637]. See Del Rico Co. v. New Mexican, Inc., 56 N.M. 538, 246 P.2d 206.

We are in accord with and express approval of the following language of Judge Learned Hand in the case of Gregoire v. Biddle, supra [177 F.2d 581]:

"It does indeed go without saying that an official, who is in fact guilty of using his powers to vent his spleen upon others, or for any other personal motive not connected with the public good, should not escape liability for the injuries he may so cause; and, if it were possible in practice to confine such complaints to the guilty, it would be monstrous to deny recovery. The justification for doing so is that it is impossible to know whether the claim is well founded until the case has been tried, and that to submit all officials, the innocent as well as the guilty, to the burden of a trial and to the inevitable danger of its outcome, would dampen the ardor of all but the most resolute, or the most irresponsible, in the unflinching discharge of their duties. Again and again the public interest calls for action which may turn out to be founded on a mistake in the face of which an official may later find himself hard put to it to satisfy a jury of his good faith. There must indeed be means of punishing public officers who have been truant to their duties;

but that is quite another matter from exposing such as have been honestly mistaken to suit by anyone who has suffered from their errors. As is so often the case, the answer must be found in a balance between the evils inevitable in either alternative. In this instance it has been thought in the end better to leave unredressed the wrongs done by dishonest officers than to subject those who try to do their duty to the constant dread of retaliation. Judged as res nova, we should not hesitate to follow the path laid down in the books."

We do not consider plaintiff is aided materially by Jacobs v. Herlands, Sup., 17 N.Y.S.2d 711; nor Mills v. Denny, 245 Iowa 584, 63 N.W.2d 222, 224, 40 A.L.R.2d 933, both of which are heavily relied on by him. The defendant in the first of these cases was not an executive officer and under the facts the case is otherwise distinguishable; and in the second the defendant was a mayor of a municipality. In that case while holding that a mayor did not enjoy absolute privilege the court stated that the "occasion and the office afford the test * * *." as to whether a statement is absolutely privileged.

A member of our highway commission holds a position and a meeting of the commission is an occasion where absolute privilege is accorded. There is nothing in Mills v. Denny, supra, to indicate otherwise. Plaintiff cites other cases where absolute privilege was denied, all of which are easily distinguishable on their facts either because of the office or the occasion involved.

Plaintiff argues that the fact members of the press were present alters the situation insofar as defendant's right to claim absolute privilege is concerned. He states that § 55–2–13, N.M.S.A.1953, provides that the commission shall conduct investigations and experiments for the benefit of highway construction and make reports concerning the same to the governor, and argues from this that the making of statements in open meeting was not authorized or proper. With this position we cannot agree. Although the power to make investigations and report thereon to the governor is unquestioned, under the broad and general authority of Art. V, Sec. 14, quoted supra, it is difficult to conceive how there could possibly be any restriction on the right of the commission to discuss any of its responsibilities or problems in open meeting. No such intent is indicated, and inasmuch as under our democratic system it is important that the public be informed concerning the conduct of official business generally, we do not find anything to alter an immunity otherwise enjoyed in the fact the meeting was open and newspaper representatives in attendance. In this connection see Matson v. Margiotti, supra, where the court discussed the question of the At-

torney General's liability as affected by the fact he had delivered a copy of the letter in which plaintiff claimed to have been libeled to the press before delivering it to the District Attorney addressee. We quote the following from the court's opinion [371 Pa. 188, 88 A.2d 900]:

"One other point has given us grave concern: Was the immediate delivery to the press by the Attorney General of a copy of his letter, prior to its delivery, to the District Attorney—a regrettable practice pursued by high ranking officials whose victims first learn their fate by radio or press— incidental to and hence entitled to the same absolute privilege as the letter, or was it outside the scope of the Attorney General's official duties or powers and therefore entitled only to a conditional privilege? Here once again we have competing rights: the right of the individual to be protected in her property and reputation, and the right of the public to be kept informed of the official actions of their public officials. * * *

"We believe it is in the public interest to permit an Attorney General to keep the public advised of his official acts and conduct where such actions are in the course of and within the scope of his official duties or powers. We therefore hold that under the facts in this case the delivery to the public press of the letter of the Attorney General to the District Attorney of Allegheny County dated January 5, 1951, was within the protection of the absolute privilege accorded in this case to the Attorney General."

On the question of governmental executives' right to give publicity the case of Glass v. Ickes, supra, and Barr v. Matteo, supra, are instructive. The following quote from the special concurring opinion of Justice Black in Barr v. Matteo, supra, expresses the reasoning underlying the conclusion that the giving of publicity in a proper case does not alter the rule [360 U.S. 564, 79 S.Ct. 1342]:

"The effective functioning of a free government like ours depends largely on the force of an informed public opinion. This calls for the widest possible understanding of the quality of government service rendered by all elective or appointed public officials or employees. Such an informed understanding depends, of course, on the freedom people have to applaud or to criticize the way public employees do their jobs, from the least to the most important."

See 132 A.L.R. 1340, 1347.

From the foregoing it should be quite apparent that the statements made by the defendant at the time and place and under the circumstances alleged were absolutely

privileged. It follows that the trial court did not err in sustaining the motion to dismiss and in denying the motion for leave to amend.

The judgment is affirmed.

It is so ordered.

COMPTON, C. J., and CARMODY, J., concur.

CHAVEZ and NOBLE, JJ., not participating.