2004-NMCA-051

90 P.3d 525

**Floyd D. WILSON et al., for themselves and all others similarly situated, Plaintiffs–Appellees,**

v.

**MASSACHUSETTS MUTUAL LIFE INSURANCE COMPANY, Defendant–Appellee,**

v.

**New Mexico Taxation and Revenue Department, Intervenor–Appellant,**

v.

**State of Texas, Intervenor–Appellant.**

Nos. 23,274, 23,351.

Court of Appeals of New Mexico.

March 3, 2004.

Certiorari Denied, No. 28,564, April 26, 2004.

Steven L. Tucker, Tucker Law Firm, P.C., George Gary Duncan, Santa Fe, for Plaintiffs–Appellees.

Sarah M. Singleton, Montgomery & Andrews, P.A., Santa Fe, Vaughn C. Williams, Skadden, Arps, Slate, Meagher & Flom, L.L.P., New York, NY, for Defendant–Appellee.

Patricia A. Madrid, Attorney General, Peter Breen, Special Assistant Attorney General, Santa Fe, for Intervenor–Appellant New Mexico Taxation and Revenue Department.

Greg Abbott, Attorney General, Maureen Powers, Assistant Attorney General, Austin, TX, for Intervenor–Appellant State of Texas.

*OPINION*

CASTILLO, Judge.

{1}  The New Mexico Taxation and Revenue Department (New Mexico) and the State of Texas (Texas) appeal the trial court's denial of their joint motion to intervene in a nationwide class action. The states sought to challenge the terms of the class action's final settlement as a contravention of their unclaimed property acts. *See* NMSA 1978, §§ 7–8A–1 to –31 (1997, as amended through 2003); Tex. Prop.Code Ann. §§ 72.001 to 74.705 (Vernon 1985, as amended through 2003). We find that the Texas appeal was untimely filed and therefore do not consider the merits of its arguments. We hold that under the circumstances of this case, New Mexico's unclaimed property act does not apply. We therefore affirm the denial of the intervention motion.

## I.  BACKGROUND

{2}  The class action arose out of Massachusetts Mutual Life Insurance Company's (MassMutual's) practice of applying modal charges when policyholders pay premiums on an installment basis, either monthly, quarterly, or semi-annually, rather than annually. In December 1998, Plaintiff Floyd D. Wilson (Wilson) filed the lawsuit on behalf of a class of persons who at any time owned disability or life insurance policies issued by MassMutual and who paid any modal charges for their policies. Other named plaintiffs were subsequently added. They alleged breach of contract; breach of common law and statutory duty to disclose modal charges; and failure to account for the modal charge when calculating annual dividends, policy cash values, and amounts of insurance coverage.

{3}  On February 22, 2002, the district court preliminarily approved the second of two settlements reached, class counsel having previously withdrawn his support for the first settlement. The district court scheduled a fairness hearing for June 20, 2002, to consider final approval of the second settlement. Under the terms of the settlement, MassMutual agreed to provide policyholders a certificate for each policy on which they paid a modal charge and to make various disclosures about modal charges. Class members could either use each certificate for $100 credit toward the purchase of select MassMutual products or redeem each certificate for $30 cash. The redemption period for the certificates was limited to a period of eighteen months from the date of issuance.

{4}  The states, non-class members, filed a joint motion to intervene on May 30, 2002, and requested to appear at the fairness hearing. Their motion challenged the legality of the time-limited certificates and asserted that the "value [of certificates not redeemed after eighteen months] reverts to MassMutual, instead of being delivered to the states' unclaimed property fund." At the fairness hearing, the district court heard arguments concerning the applicability of the unclaimed property acts from both states and from proponents of the settlement. New Mexico additionally provided an oral offer of proof; Texas was granted leave to file an offer of proof by affidavit. On June 27, 2002, the district court issued two orders. One denied the motion to intervene; the other gave final approval to the settlement. The states appealed both orders.

{5}  We consolidated the states' appeals with those of six individuals or groups of individual class members who appealed the settlement's final approval. The class members raised issues of class certification, the adequacy of notice, the fairness of the settlement, the level and allocation of attorney

fees, and the awards to class representatives. This Court was notified shortly before oral argument that the class members had settled their six appeals; we subsequently granted the joint motion to dismiss the class members' appeals. We therefore address only the states' appeals.

## II. DISCUSSION

{6} We first address two threshold questions: the timeliness of the Texas appeal and standing to move for intervention. We then turn to the intervention motion.

### A. The Notice of Appeal by Texas Was Untimely Filed

{7} Wilson urges this Court to dismiss Texas' notice of appeal for untimeliness. Rule 12–201(A)(2) NMRA 2004 requires that a notice of appeal be filed within thirty days of the entry of final judgment. The district court's orders denying the intervention motion and approving the final settlement were filed on June 27, 2002; since the thirtieth day fell on a weekend, the notice of appeal was due Monday, July 29, 2002. *See* Rule 12–308(A) NMRA 2004. The appeal was filed on July 30, one day late.

{8} The district court's authority to grant an extension is governed by Rule 12–201(E). Where the motion for an extension is filed prior to the expiration of the thirty-day time limit, the extension of time for filing a notice of appeal may be granted upon a finding of good cause. Rule 12–201(E)(1). When the motion is filed after the expiration of the thirty-day deadline, there must be a finding of excusable neglect or circumstances beyond the control of the appellant. Rule 12–201(E)(2). The district court has sixty days to grant an extension to appeal. Rule 12–201(E)(4).

{9} Texas dispatched its notice of appeal on July 24, 2002, in a United Parcel Service (UPS) second-day air overnight package; the notice was not delivered by UPS until July 30. On August 9, 2002, Texas incorrectly sought leave from this Court for an extension to file its notice of appeal; we directed Texas to request the extension from the district court, which Texas did on August 12, 2002. Without a hearing or a notice to the parties,

the district court ordered the extension on August 14, 2002, upon a finding of good cause. Unaware of the court's order, Wilson on August 20, 2002, timely objected to Texas' motion for an extension. The next day, Wilson learned of the order and filed a motion for reconsideration. Wilson challenged the court's use of the good cause standard and argued that Texas was unable to meet the proper standard of excusable neglect or circumstances beyond its control. New Mexico and MassMutual joined Texas in opposing Wilson's motion for reconsideration. Following a hearing, the district court issued an order on September 24, 2002, that denied Wilson's motion and substituted a finding of circumstances beyond Texas' control for the good cause finding in the court's August 14 order. Wilson then asked this Court to dismiss the Texas appeal on the grounds that the district court lacked jurisdiction for the September 24 order because the sixty-day period for granting extensions had expired; or, alternatively, that the district court's finding of circumstances beyond the control of Texas was unsupported by the record.

{10} We review de novo the question of whether a district court has authority to grant an extension of time for filing a notice of appeal. *See Chavez v. U–Haul Co.*, 1997–NMSC–051, ¶ 13, 124 N.M. 165, 947 P.2d 122. If authority exists, we uphold the extension, absent abuse of discretion. *See id.* ¶ 26. The district court's authority to grant an extension is limited to sixty days. *Id.* ¶ 8 (citing Rule 12–201(E)(4)). In this case, there is no question that the district court's initial order of August 14 was entered within the sixty-day period. The court apparently misread the standard to be applied in that order and attempted to amend it on September 24. However, we find no precedent allowing for an extension order to be amended after the sixty-day period. *See id.* ¶ 15 (reiterating that "the sixty-day period circumscribing the district court's authority is tolled only in cases where post-trial motions are filed"). Therefore, we consider the September 24 order to be a second order for an extension and find it without effect; the court lacked authority to grant an extension by that date.

{11} Furthermore, the circumstances in this case are not those that warrant the extension. The timely filing of a notice of appeal is a mandatory precondition to jurisdiction, not an absolute jurisdictional requirement. *Executive Sports Club, Inc. v. First Plaza Trust,* 1998–NMSC–008, ¶ 4, 125 N.M. 78, 957 P.2d 63. However, an appellant's untimely filing will be overlooked in "[o]nly the most unusual circumstances beyond the control of the parties—such as error on the part of the court." *Chavez,* 1997–NMSC–051, ¶ 19, 124 N.M. 165, 947 P.2d 122 (internal quotation marks and citation omitted); *Executive Sports Club, Inc.,* 1998–NMSC–008, ¶ 4, 125 N.M. 78, 957 P.2d 63 (internal quotation marks and citation omitted); *San Juan 1990–A., L.P. v. El Paso Prod. Co.,* 2002–NMCA–041, ¶ 23, 132 N.M. 73, 43 P.3d 1083 [hereinafter *San Juan* ]. Texas' late filing was admittedly due solely to its reliance on the timeliness of the UPS delivery; there is no suggestion that a court administrative or clerical error caused the delay. *See Trujillo v. Serrano,* 117 N.M. 273, 278, 871 P.2d 369, 374 (1994) (discussing failure of district court to notify parties of its decision after telling the parties it would do so and holding that "if the actions of the magistrate court caused [the appellant's] filing to be untimely[,] . . . [his] appeal should be heard."); *Adams v. Tatsch,* 68 N.M. 446, 448, 362 P.2d 984, 985–86 (1961) (allowing late filing where court was in error); *Jaritas Live Stock Co. v. Spriggs,* 42 N.M. 14, 16, 74 P.2d 722, 723 (1937) (per curiam) (same).

{12} Nor are these unusual circumstances outside of Texas' control. We view the circumstances here as similar to those in *San Juan,* where plaintiffs' counsel also relied on a courier service and argued that the courier service had misinformed her that the clerk's office was closed. *See San Juan,* 2002–NMCA–041, ¶ 12, 132 N.M. 73, 43 P.3d 1083. Plaintiffs' counsel in *San Juan* did not pursue various options available, such as calling the clerk's office to see if the information was valid or filing the notice by fax. As a result, the appeal was filed one day late. We held that the late filing was neither a court-caused error nor a circumstance beyond the appellant's control. *Id.* ¶ 27. Here, Texas' counsel had options available to her that she did not pursue, such as following up on the UPS delivery and/or filing the notice by fax. We will not extend the exception to late filing to circumstances like this, where the court played no part in the delay and where options available to the appellant to ensure timely filing of the notice were not taken. Therefore, we dismiss the Texas appeal as untimely.

**B. New Mexico Has Standing**

{13} Standing is a principle that ensures only those with a legitimate interest can participate in a lawsuit. *De Vargas Sav. & Loan Ass'n of Santa Fe v. Campbell,* 87 N.M. 469, 471, 535 P.2d 1320, 1322 (1975); *John Does I Through III v. Roman Catholic Church of Archdiocese of Santa Fe, Inc.,* 1996–NMCA–094, ¶ 36, 122 N.M. 307, 924 P.2d 273. Without raising the requirements for standing, Wilson asserts that New Mexico lacks standing to intervene. He premises his argument on our Supreme Court's observation that the general requirements for standing "seem to accord" with the requirements for intervention as of right. *N.M. Right to Choose/NARAL v. Johnson,* 1999–NMSC–005, ¶ 17, 126 N.M. 788, 975 P.2d 841. Wilson contends, in essence, that since New Mexico lacks sufficient legal interest for intervention, it necessarily lacks standing.

{14} We find Wilson's reliance on *New Mexico Right to Choose/NARAL* misplaced; that case does not stand for the proposition that the requirements for standing and intervention are identical, or that a party unable to intervene automatically lacks standing. *See id.* (explaining that the power of the court to confer standing "does not equate with rights of indiscriminate intervention" (internal quotation marks and citations omitted)); *see also Chiles v. Thornburgh,* 865 F.2d 1197, 1212–13 (11th Cir.1989) (discussing the difference in interests required for standing and for intervention); *United States v. 36.96 Acres of Land,* 754 F.2d 855, 859 (7th Cir.1985) (stating that there is a "qualitative difference" between interest sufficient for standing and that required for intervention). *But see Clark v. Putnam County,* 168 F.3d 458, 463 (11th Cir.1999) (observing that a lack of standing could suggest a lack of inter-

est necessary for intervention); *but see generally* 6 James Wm. Moore, *Moore's Federal Practice* § 24.03[2][d] (3d ed.2003) (discussing differences among jurisdictions as to the relationship between intervention of right and standing).

{15} Wilson also relies on *Paterson v. Texas*, 308 F.3d 448, 451 (5th Cir.2002), which held that Texas, seeking enforcement of its unclaimed property act, lacked standing to intervene in a class action settlement. The Fifth Circuit based its decision on *United States v. Hays*, 515 U.S. 737, 743, 115 S.Ct. 2431, 132 L.Ed.2d 635 (1995), which reiterated that for standing under the federal constitution, an individual must demonstrate "an injury in fact—an invasion of a legally protected interest that is (a) concrete and particularized, and (b) actual or imminent, not conjectural or hypothetical." *Id.* (internal quotation marks and citation omitted); *Paterson*, 308 F.3d at 451 (internal quotation marks and citation omitted). The court in *Paterson* concluded that since the state could only speculate on what settlement checks or money orders might go unclaimed, it failed to demonstrate imminent injury. *Id.*

{16} We do not find the reasoning in *Paterson* persuasive. *Paterson* relies on *Hays*, which concerns a private individual's standing, not the state's standing to enforce a statute granting express authority to sue. *See Hays*, 515 U.S. at 739, 115 S.Ct. 2431. Here, we are dealing with an intervention motion filed by a state, not an individual.

■ {17} New Mexico asserts that its standing derives from the enforcement powers granted in the act itself. *See* § 7–8A–22 ("The administrator may maintain an action in this or another state to enforce the Uniform Unclaimed Property Act."). We agree with New Mexico and observe that other jurisdictions have premised standing by a state on its right to enforce its statutes. *See Alaska v. United States Dep't of Transp.*, 868 F.2d 441, 443 (D.C.Cir.1989) (stating that "[i]t is common ground that States have an interest, as sovereigns, in exercising the power to create and enforce a legal code" and concluding that states have standing to sue (internal quotation marks and citation omitted)); *United States v. City of Parma, Ohio*, 661 F.2d 562, 572 (6th Cir.1981) (stating that the federal fair housing statute clearly authorizes the attorney general to sue, thus affording standing); *United States v. State*, 798 F.Supp. 483, 488 (W.D.Tenn.1992) (observing that a civil rights statute gave the attorney general standing to enforce statutory violations); *see also* 13A Charles Alan Wright, Arthur R. Miller & Edward H. Cooper, *Federal Practice and Procedure* § 3531.11, at 29 (2d ed. 1984) ("There can be no doubt whatever that in its own courts and under its own law, a state has standing to enforce broad concepts of the public interest against individual defendants ....").

{18} We now consider the motion to intervene.

## C. The Motion to Intervene Was Properly Denied

{19} We concluded above that New Mexico has standing to assert violation of the unclaimed property act. However, as we discussed above, standing does not automatically confer the interest necessary to require intervention. *See N.M. Right to Choose/NARAL*, 1999–NMSC–005, ¶ 17, 126 N.M. 788, 975 P.2d 841; *see also* 7C Charles Alan Wright, Arthur R. Miller & Mary Kay Kane, *Federal Practice and Procedure* § 1908, at 22–23 n. 22.1 (2003 Pocket Part) [hereinafter 7C Wright] (stating that "[t]he [United States] Supreme Court refused to rule on whether the interest required to satisfy Rule 24(a) and that required to confer standing is the same").

■ {20} "[I]ntervention is the proceeding whereby a person is permitted to become a party in an action between other persons after which litigation proceeds with both original and intervening parties." *Richins v. Mayfield*, 85 N.M. 578, 580, 514 P.2d 854, 856 (1973). New Mexico sought to intervene in the settlement as a matter of right under Rule 1–024(A)(1) and (2) NMRA 2004. Intervention of right may be obtained "(1) when a statute confers an unconditional right to intervene; or (2) when the applicant claims an interest relating to the property ... which is the subject of the action." *Id.* New Mexico also suggests for the first time

on appeal that "a party may be entitled to a discretionary intervention" under Rule 1–024(B). Since the state did not request discretionary intervention below, we do not consider it. *See Campos Enters., Inc. v. Edwin K. Williams & Co.,* 1998–NMCA–131, ¶ 12, 125 N.M. 691, 964 P.2d 855.

### 1. Standard of Review

■ {21} Absent a clear abuse of discretion, we will uphold the district court's denial of the motion to intervene. *See Solon v. WEK Drilling Co.,* 113 N.M. 566, 567, 829 P.2d 645, 646 (1992); *Apodaca v. Town of Tome Land Grant,* 86 N.M. 132, 133, 520 P.2d 552, 553 (1974). A court abuses its discretion when it misapplies the law to the facts; we review the application of the law de novo to determine whether an abuse of discretion has occurred. *See N.M. Right to Choose/NARAL,* 1999–NMSC–028, ¶ 7, 127 N.M. 654, 986 P.2d 450 ("[W]e may characterize as an abuse of discretion a discretionary decision that [is] premised on a misapprehension of the law." (internal quotation marks and citation omitted)); *Gandara v. Gandara,* 2003–NMCA–036, ¶ 9, 133 N.M. 329, 62 P.3d 1211 (same); *see also Chino Mines Co. v. Del Curto,* 114 N.M. 521, 523, 842 P.2d 738, 740 (Ct.App.1992) (applying de novo review to a denial of intervention motion where underlying facts are not in dispute). We likewise review de novo the meaning of language used in a statute. *State v. Cleve,* 1999–NMSC–017, ¶ 7, 127 N.M. 240, 980 P.2d 23.

### 2. Merits of the Arguments

#### a. Statutory Right to Intervene

■ {22} We first analyze New Mexico's right to intervene under Rule 1–024(A)(1). As discussed above, Section 7–8A–22 of the act provides that "[t]he administrator may maintain an action in this or another state to enforce the Uniform Unclaimed Property Act." Without authority from New Mexico, the state suggests that this provision confers an unconditional right to intervene. We disagree.

{23} We find no precedent in New Mexico allowing intervention under Rule 1–

024(A)(1) in the absence of direct statutory authorization. We observe that federal courts applying the federal counterpart to this rule have granted intervention where a statute expressly provides for such intervention. *See Illinois v. Outboard Marine Corp.,* 619 F.2d 623, 631–32 (7th Cir.1980) (holding that the Federal Water Pollution Control Act, which provided that any citizen "may intervene" in certain actions, allowed intervention by the state (internal quotation marks and citation omitted)), *vacated and remanded on other grounds by* 453 U.S. 917, 101 S.Ct. 3152, 69 L.Ed.2d 1000 (1981); *Raite Rubbish Removal Corp. v. Onondaga County,* 161 F.R.D. 236, 237–38 (N.D.N.Y. 1995 mem.) (allowing intervention of the state under 28 U.S.C. § 2403(b), which provides that a state "has an absolute right to intervene" when a state statute is challenged on federal constitutional grounds); *O'Keefe v. N.Y. City Bd. of Elections,* 246 F.Supp. 978, 980–81 n. 5 (S.D.N.Y.1965) (permitting intervention by the federal government where plaintiffs challenge the constitutionality of a federal statute and quoting 28 U.S.C. § 2403, which requires a court to "permit the United States to intervene" where the constitutionality of a federal statute is in question (internal quotation marks and citation omitted)).

{24} Where federal statutes say nothing of intervention, courts are not apt to recognize an unconditional right to intervene under the federal rule. *See* 7C Wright, *supra* § 1906, at 245; *see also State ex rel. Wilson v. Wilson,* 475 So.2d 194, 196 (Ala.Civ.App. 1985) (finding that the state child support act, which permits the state to enforce the act but makes no mention of intervention, does not give the state a right to intervene). Moreover, we find no case law from other states in which their unclaimed property acts, with the same enforcement provision as New Mexico's, confer an unconditional right to intervene. Since there is an absence of any specific authority for intervention in New Mexico's act, we decline to recognize such a right under Rule 1–024(A)(1).

#### b. Interest in the Litigation

{25} We next turn to Rule 1–024(A)(2). To succeed in its motion under this para-

graph, New Mexico had to demonstrate each of three prerequisites: "namely: (1) interest; (2) impairment of that interest; and (3) inadequacy of representation of that interest." *Chino Mines Co.*, 114 N.M. at 523, 842 P.2d at 740. Failure to show any one of the three factors is fatal. *Id.* The parties dispute the first factor, New Mexico's interest in the property, that is, the unredeemed certificates. Since interest is dependent upon whether the unclaimed property act applies, we proceed with a discussion of the act.

{26} New Mexico's act (also referred to herein as the act) is fashioned on the 1995 Uniform Unclaimed Property Act (1995 UPA), promulgated by the National Conference of Commissioners on Uniform State Laws. *See* Unif. Unclaimed Prop. Act §§ 1–33 (superseded 1995) 8C U.L.A. 87–149 (2001). Property that is presumed abandoned is subject to the custody of the state. NMSA 1978, § 7–8A–4 (1997). Property is presumed abandoned if it is unclaimed by the apparent owner for a specified period of time—in this case, for five years. Section 7–8A–2(a). Once the period of time has passed and the property is presumed abandoned, the holder of the property must turn it over to the state. Section 7–8A–8. Any unclaimed funds New Mexico receives are deposited into the state's general fund. Section 7–8A–13. The property can be claimed by its owners at any time. Section 7–8A–15. Wilson and MassMutual argue that the act does not apply for various reasons, including their view that the certificates are not property as defined in the act.[1] Based on the following analysis, we conclude that the certificates are not property.

{27} To establish whether the certificates are property, we first look to the act itself in order to give effect to the plain meaning of the words the legislature used. *See Regents of the Univ. of N.M. v. N.M. Fed'n of Teachers*, 1998–NMSC–020, ¶ 28, 125 N.M. 401, 962 P.2d 1236. Statutory words are presumed to be used in their ordinary and usual sense; only if the words are ambiguous do we construe the statute. *Id.* We do not blindly

assume that statutes are written with the precision that judges may prefer. *Hughes v. Timberon Water & Sanitation Dist.*, 1999–NMCA–136, ¶ 17, 128 N.M. 186, 991 P.2d 16. Rather, we will interpret statutes to avoid unreasonable results. *See State v. Herbstman*, 1999–NMCA–014, ¶ 21, 126 N.M. 683, 974 P.2d 177.

{28} "Property" is defined in pertinent part in the act as "a fixed and certain interest in intangible property that is held, issued, or owed in the course of a holder's business." Section 7–8A–1(13). The same definition is used in the 1995 UPA. *See* Unif. Unclaimed Prop. Act § 1(13), 8C U.L.A. 98. New Mexico correctly points out that the word "ordinary" was dropped between the 1981 and 1995 UPAs. The 1981 UPA, as well as the previous version of New Mexico's act, which was enacted in 1989 and was based on the 1981 UPA, incorporated the phrase "ordinary course of business" into the section concerning "[p]roperty presumed abandoned." *See* NMSA 1978, § 7–8–3(A) (1989) ( [A]ll intangible property ... that is held, issued or owing in the ordinary course of a holder's business ... is presumed abandoned." (New Mexico's 1989 act)). Neither the 1981 UPA nor New Mexico's 1989 act included a definition of property in the section on definitions.

{29} New Mexico does not argue that there is a difference in meaning between "ordinary course of business" and "course of business" and does not provide us with any case law interpreting the phrases differently. We have not located any such case law. *See, e.g., Blue Cross & Blue Shield of Fla., Inc. v. Dep't of Banking & Fin.*, 791 F.2d 1501, 1503 (11th Cir.1986) (per curiam) (indicating that the plaintiff insurance company issues benefit checks in the "course of business," implying a routine activity). Indeed, *Black's Law Dictionary* implies that the phrases are interchangeable. *Black's Law Dictionary* 356 (7th ed.1999) (defining "course of business" as "[t]he normal routine in managing a ... business.... Also termed *ordinary course of business*" (emphasis in original)). We observe that the legislature uses both phrases

1. Although Plaintiffs argued in their brief that the act did not apply to the certificates, they reversed their position at oral argument and stated that the certificates were property subject to the act under certain conditions. We note this reversal.

in the Motor Vehicle Registration Laws, apparently interchangeably. *Compare* NMSA 1978, § 66–3–115(A) (1978) (prohibiting any person licensed as a dealer or wrecker from selling a vehicle obtained "in the course of business" without completing a dismantler's notification form), *and* NMSA 1978, § 66–3–401(D) (1998) (permitting, under certain conditions, nonpayment of the motor vehicle excise tax if the dealer or wrecker sells a vehicle "in the ordinary course of business"). We presume, therefore, that the phrases are interchangeable.

{30}  We review the use of "course of business" or "ordinary course of business" in non-UPA and UPA cases to ascertain the plain meaning.  Both phrases have been applied with a consistent meaning in a variety of contexts outside of the UPA. *See, e.g., In re Energy Coop., Inc.*, 832 F.2d 997, 1004 (7th Cir.1987) (specifying that under the federal bankruptcy code, a payment made as part of a "recurring, customary trade transaction[ ]" is one within the ordinary course of business); *Fleet Nat'l Bank v. Anchor Media Television, Inc.*, 831 F.Supp. 16, 37 (D.R.I. 1993) (stating, in a breach of contract case, that "[i]n general, a transaction is outside the ordinary course of business if it is a transaction of an unusual type for the business involved"); *Schmerling v. Injured Workers' Ins. Fund*, 139 Md.App. 470, 776 A.2d 80, 93 (Ct.Spec.App.2001) ("The phrase 'ordinary course of business' has the same meaning under the Maryland Wiretap Act as it does in the myriad of other legal contexts in which it is used: an action is taken in the ordinary course of business if it is a routine activity of the business . . . ." (citation omitted)), *rev'd on other grounds by* 368 Md. 434, 795 A.2d 715 (2002).

{31}  Courts do appear to apply the same meaning to the phrases in UPA cases; however, we observe that in these cases, whether plaintiffs were acting in the course of business or ordinary course of business was not in dispute. *See, e.g., Blue Cross & Blue Shield of Fla., Inc.*, 791 F.2d at 1503 (implying that a "course of business" is a routine activity); *Riggs Nat'l Bank of Washington, D.C. v. District of Columbia*, 581 A.2d 1229, 1235 n. 10 (D.C.1990) (suggesting that "in the course of business" is practice that is routine or common in the industry); *La. Health Serv. & Indem. Co. v. Tarver*, 622 So.2d 277, 279 (La.Ct.App.1993) (observing that the plaintiff, in the "ordinary course of business," analyzes benefit claims to determine whether they are payable).

{32}  We therefore interpret course of business to mean business practice that is routine, regular, usual, or normally done. The course of business for MassMutual is to sell insurance and other financial products. The certificates being issued as part of the settlement are not part of the company's regular line of products; nor is the issuance of certificates a routine, usual, or normal practice.  Instead, they are being issued as a result of a one-time settlement.  Because they were not held, issued, or owed in the course of MassMutual's business, we conclude that the certificates do not meet the definition of property under the act.  As a result, New Mexico failed to establish that it had an interest in the settlement necessary for intervention under Rule 1–024(A)(2).

{33}  Since we conclude that the unclaimed property act does not apply in this case, we do not consider the remaining issues concerning the act raised by New Mexico, including whether the act may be voluntarily waived.  Since New Mexico does not have the right to intervene, we do not consider any other issues raised by the State.

### III.  CONCLUSION

{34}  We dismiss the Texas appeal.  We hold that the district court did not abuse its discretion in denying the motion to intervene, and we therefore affirm the denial.

{35}  **IT IS SO ORDERED.**

BUSTAMANTE and FRY, JJ, concur.